# Matter of Juan Carlos RIVERA-VALENCIA, Respondent

File A43 643 008 - Chicago

*Decided April 2, 2008*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A judgment of guilt that has been entered by a general court-martial of the United States Armed Forces qualifies as a "conviction" within the meaning of section 101(a)(48)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(48)(A) (2000).

FOR RESPONDENT: Christopher A. Clausen, Esquire, Marshalltown, Iowa

FOR THE DEPARTMENT OF HOMELAND SECURITY: Brendan Curran, Assistant Chief Counsel

BEFORE: Board Panel: FILPPU, COLE, and PAULEY, Board Members.

FILPPU, Board Member:

In a decision dated September 13, 2007, an Immigration Judge sustained the charges of deportability against the respondent and ordered him removed from the United States. The respondent has appealed from that decision. The Department of Homeland Security opposes the appeal. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of El Salvador and a lawful permanent resident of the United States. On February 14, 1997, he was convicted by a general court-martial in Fort Bliss, Texas, of "carnal knowledge" in violation of Article 120(b) of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 920(b) (Supp. II 1996).[1] In 1996, when the

---

[1] The respondent was also adjudged guilty of "indecent acts or liberties" with a person under 16, which constitutes a violation of Article 134 of the UCMJ, 10 U.S.C. § 934 (1994).

respondent committed his offense, Article 120 of the UCMJ provided as follows, in pertinent part:

> Rape and carnal knowledge
>
> . . . .
>
> (b)  Any person subject to this chapter who, under circumstances not amounting to rape, commits an act of sexual intercourse with a person—
>> (1) who is not that person's spouse; and
>> (2) who has not attained the age of sixteen years;
> is guilty of carnal knowledge and shall be punished as a court-martial may direct.
>
> . . . .
>
> (d) (1) In a prosecution under subsection (b), it is an affirmative defense that—
>> (A) the person with whom the accused committed the act of sexual intercourse had at the time of the alleged offense attained the age of twelve years; and
>> (B) the accused reasonably believed that that person had at the time of the alleged offense attained the age of sixteen years.
>> (2) The accused has the burden of proving a defense under paragraph (1) by a preponderance of the evidence.

Removal proceedings ensued, and in September 2007 the Immigration Judge determined that the respondent's conviction by court-martial rendered him deportable from the United States as an alien "convicted" of a crime involving moral turpitude, an aggravated felony, and a crime of child abuse.  Sections 237(a)(2)(A)(i), (iii), (E)(i) of the Immigration and Nationality Act, 8 U.S.C. §§ 1227(a)(2)(A)(i), (iii), (E)(i) (2000).   In particular, the Immigration Judge concluded that the respondent's carnal knowledge offense constituted "sexual abuse of a minor," an aggravated felony under section 101(a)(43)(A) of the Act, 8 U.S.C. § 1101(a)(43)(A) (2000), that precluded him from qualifying for most forms of relief from removal.

On appeal, the respondent does not challenge the Immigration Judge's denial of his applications for relief.  Nor does he dispute that the elements of the offense defined by Article 120(b) of the UCMJ are sufficient to support the charges of deportability.  Instead, he asserts that the removal proceedings must be terminated because a judgment of guilt entered by a general court-martial does not qualify as a "conviction" for immigration purposes.  In the alternative, the respondent argues that his particular court-martial conviction should not be recognized as a basis for removal because the Armed Forces did not inform him of his right to consular notification under Article 36 of the Vienna Convention on Consular Relations and Optional Protocol on Disputes, *opened for signature* Apr. 24, 1963, 21 U.S.T. 77, T.I.A.S. No. 6820, 596 U.N.T.S. 261, *available at* 1969 WL 97928 ("Vienna Convention").

## II. ISSUE

The principal issue on appeal is whether a judgment of guilt of an alien, entered by a general court-martial of the United States Armed Forces, qualifies as a "conviction" within the meaning of the Immigration and Nationality Act.

## III. ANALYSIS

### A. Section 101(a)(48)(A) of the Act

As noted previously, the Immigration Judge determined that the respondent is removable under three separate grounds of deportability, each of which required proof by clear and convincing evidence that the respondent had been "convicted" of a crime. The term "conviction" is defined by section 101(a)(48)(A) of the Act, which states as follows:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
>    (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>    (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

Section 101(a)(48)(A) was enacted pursuant to section 322(a)(1) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-628 (effective Apr. 1, 1997) ("IIRIRA"), and applies to "convictions . . . entered before, on, or after" IIRIRA's enactment date. IIRIRA § 322(c), 110 Stat. at 3009-629; *see also Montenegro v. Ashcroft*, 355 F.3d 1035, 1037 (7th Cir. 2004).

### B. Judgment of General Court-Martial as a "Conviction"

Whether a judgment of guilt entered by a general court-martial is encompassed by the language of section 101(a)(48)(A) of the Act is a question of statutory interpretation that we review de novo. 8 C.F.R. § 1003.1(d)(3)(ii) (2007). In conducting such review, the touchstone of our analysis is the plain language of the statute. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987); *INS v. Phinpathya*, 464 U.S. 183, 189 (1984). The plain language of section 101(a)(48)(A) defines a "conviction" in part as "a formal judgment of guilt of the alien entered by a court." Furthermore, a court's formal judgment of "guilt" falls within the language of section 101(a)(48)(A) so long as it was entered in a "genuine criminal proceeding," that is, a proceeding that is

"criminal in nature under the governing laws of the prosecuting jurisdiction." *Matter of Eslamizar*, 23 I&N Dec. 684, 688 (BIA 2004).

There is no dispute that a general court-martial is a "criminal" proceeding under the governing laws of the United States Armed Forces, and the respondent's general court-martial unquestionably resulted in the entry of a formal judgment of his "guilt" beyond a reasonable doubt. UCMJ Art. 51(c), 10 U.S.C. § 851(c) (2000); *United States v. Verdi*, 5 M.J. 330, 335 (C.M.A.1978) (citing *In re Winship*, 397 U.S. 358 (1970)). Furthermore, because the respondent was a Specialist in the United States Army at the time of his court-martial, he was subject to the constitutional jurisdiction of the military justice system. *Solorio v. United States*, 483 U.S. 435, 439-40 (1987). As the Supreme Court has recognized, courts-martial are lawful tribunals with authority to finally determine any case over which they have jurisdiction. *Grafton v. United States*, 206 U.S. 333, 345 (1907) (holding that a judgment of acquittal entered by a general court-martial has preclusive effect in civilian courts for double jeopardy purposes). Thus, a trial by court-martial does not infringe on the constitutional rights of an accused who is properly subject to military jurisdiction, despite the absence of some protections afforded civilian defendants, such as the right to a trial by jury. *Weiss v. United States*, 510 U.S. 163, 176-77 (1994); *Whelchel v. McDonald*, 340 U.S. 122, 127 (1950) (citing *Kahn v. Anderson*, 255 U.S. 1, 8 (1921)).[2] Because the respondent's crime was adjudicated in a proceeding that was "criminal in nature" under the laws of the prosecuting jurisdiction—i.e., the United States Armed Forces—we are satisfied that his "guilt" was determined in a "genuine criminal proceeding." *Matter of Eslamizar*, *supra*. Thus, the only remaining question is whether that adjudication of guilt was entered by a "court."

The Immigration and Nationality Act does not define the term "court." Therefore we give the word its ordinary, contemporary, and common meaning: "[a] governmental body consisting of one or more judges who sit to adjudicate disputes and administer justice." *Black's Law Dictionary* 378 (8th ed. 2004). A military judge presides over each general court-martial, and an accused may

---

[2] We emphasize, however, that "the protections in the Bill of Rights, except those which are expressly or by necessary implication inapplicable, are available to members of our armed forces." *United States v. Jacoby*, 29 C.M.R. 244, 246-47 (C.M.A. 1960). Thus, a person prosecuted by general court-martial possesses many of the procedural protections afforded to civilian defendants, such as the privilege against compulsory self-incrimination, UCMJ Art. 31, 10 U.S.C. § 831 (2000); the right to representation by counsel at public expense, UCMJ Art. 38(b), 10 U.S.C. § 838(b) (2000); and the right to call witnesses and present evidence, UCMJ Art. 46, 10 U.S.C. § 846 (2000); *see also Weiss v. United States*, *supra*, at 194 (Ginsburg, J., concurring) (stating that "men and women in the Armed Forces do not leave constitutional safeguards and judicial protection behind when they enter military service").

elect to be tried by a military judge alone or by a panel comprised of not less than five members. UCMJ Arts. 16(1), 26(a), 10 U.S.C. §§ 816(1), 826(a) (2000 & Supp. IV 2004).[3] Furthermore, the function of a general court-martial is, among other things, "to try persons subject to [the UCMJ] for any offense made punishable [thereunder]" and to "adjudge any punishment not forbidden." UCMJ Art. 18, 10 U.S.C. § 818 (2000). Such a tribunal satisfies the conventional definition of a "court."

We recognize that some differences exist between civilian courts and general courts-martial. General courts-martial are not "Federal courts" in the strict sense; that is, they are not among the "inferior Courts" that Congress "may from time to time ordain and establish" pursuant to Article III, section 1 of the Constitution of the United States. Instead, courts-martial operate on an ad hoc basis and derive their constitutional jurisdiction from Article 1, section 8 of the Constitution, which grants Congress the power "To make Rules for the Government and Regulation of the land and naval Forces." *See United States ex rel. Toth v. Quarles*, 350 U.S. 11, 14 & n.6 (1955) (citing *Dynes v. Hoover*, 61 U.S. 65, 79 (1857) ("Congress has the power to provide for the trial and punishment of military and naval offenses . . . and . . . the power to do so is given without any connection between it and the 3d article of the Constitution defining the judicial power of the United States . . . .")). Yet despite these differences between civilian and military courts, this Board has from its earliest days considered judgments entered by courts-martial, both domestic and foreign, to be valid "convictions" for immigration purposes. *Matter of V-D-B-*, 8 I&N Dec. 608 (BIA1960); *Matter of F-*, 8 I&N Dec. 469 (BIA 1959); *Matter of F-*, 5 I&N Dec. 56 (BIA 1953), *rev'd on other grounds*, *Matter of P-*, 6 I&N Dec. 481 (BIA 1954); *Matter of W-*, 1 I&N Dec. 485 (BIA 1943). We see nothing in the language of section 101(a)(48)(A) that would lead us to conclude that Congress intended to modify this historical understanding by limiting the term "court" to those organized under Article III of the Constitution or its counterparts under State law.

As we noted previously, the Supreme Court has long held that the judgments of courts-martial are to "be accorded the finality and conclusiveness as to the issues involved which attend the judgments of a civil court in a case of which it may legally take cognizance." *Grafton v. United States*, *supra*, at 345. Consequently, it has been determined in the Federal sentencing context that for purposes of computing an individual's criminal history as a basis for

---

[3] A military judge must be a member of a Federal or State bar whose qualifications for judicial duty have been certified by the Judge Advocate General for his or her particular branch of the service. UCMJ Art. 26(b), 10 U.S.C. § 826(b) (2000); *see also Weiss v. United States*, *supra*, at 167-68.

sentence enhancement, "[s]entences resulting from military offenses are counted if imposed by a general or special court martial." U.S. Sentencing Guidelines Manual § 4A1.2(g) (2000), *reprinted in* USSG, § 4A1.2(g), 18 U.S.C.A. (2007). Similarly, in cases arising under 18 U.S.C. § 922(g)(1) (2000), which makes it a crime for a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to ship, transport, possess or receive a firearm in interstate commerce, the Federal courts—including the United States Court of Appeals for the Seventh Circuit, in whose jurisdiction this proceeding arises—have concluded that the term "any court" encompasses a general court-martial. *United States v. Martinez*, 122 F.3d 421, 424 (7th Cir. 1997); *United States v. MacDonald*, 992 F.2d 967, 970 (9th Cir. 1993); *see also United States v. Lee*, 428 F.2d 917, 918 n.1, 920 (6th Cir. 1970) (arising under former 15 U.S.C. § 902(e), *repealed by* Pub. L. No. 90-351, tit. IV, § 906, 82 Stat. 234 (1968)); *United States v. Noble*, 613 F. Supp. 1224, 1225-26 (D. Mont. 1985) (arising under former 18 U.S.C. app. § 1202, *repealed by* Firearms Owners' Protection Act, Pub. L. No. 99-308, § 104(b), 100 Stat. 449, 459 (1986)). These authorities lend further support to our determination that the statutory term "court" includes a general court-martial.

### C. Effect of Ninth Circuit Precedent in *Gubbels v. Hoy*

In his appellate brief, the respondent relies heavily on a 1958 decision of the Ninth Circuit holding that a judgment of guilt entered by a general court-martial was not a "conviction" for immigration purposes, primarily because the "ad hoc" nature of such tribunals raised serious doubts as to whether it would be practicable for the alien to request or receive a judicial recommendation against deportation ("JRAD"),[4] which the court deemed an "important right or privilege" of the alien under the law as it then existed.

---

[4] Before 1990, former section 241(b)(2) of the Act, 8 U.S.C. § 1251(b)(2) (1988), provided as follows, in pertinent part:

> The provisions of subsection (a)(4) respecting the deportation of an alien convicted of a crime or crimes shall not apply . . . (2) if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State, the Service, and prosecution authorities, who shall be granted an opportunity to make representations in the matter. The provisions of this subsection shall not apply in the case of any alien who is charged with being deportable from the United States under subsection (a)(11) of this section.

*Gubbels v. Hoy*, 261 F.2d 952, 954 (9th Cir. 1958); *cf. also Matter of Gian*, 11 I&N Dec. 242 (BIA 1965) (holding that alien's conviction by a French criminal court while serving overseas as a member of the United States Army could not serve as a basis for his deportation because the French court lacked authority to make a binding JRAD). *But see Matter of W-*, *supra*, at 486 (rejecting an opinion of the Solicitor of Labor, which had cited the unavailability of JRADs as a justification for refusing to treat courts-martial as "convictions" for immigration purposes). Because the present case arises within the jurisdiction of the Seventh Circuit, the Ninth Circuit's decision in *Gubbels v. Hoy*, *supra*, lacks controlling precedential force. Nevertheless, we deem it appropriate to explain why we consider the rationale of that case to be inapposite here.

First, any present determination as to whether the respondent's adjudication of guilt by a general court-martial constitutes a "conviction" must be determined by reference to section 101(a)(48)(A) of the Act, a provision of law not yet in existence when *Gubbels v. Hoy*, *supra*, was decided. And as we have explained, a judgment of guilt entered by a general court-martial is encompassed by the language of section 101(a)(48)(A). Second, assuming that *Gubbels v. Hoy* accurately characterized the capacity of an alien to receive a JRAD from a court-martial,[5] the decision lacks modern relevance because Congress abolished the JRAD pursuant to section 505 of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5050 ("IMMACT").[6] Indeed, as early as 1959 we had explained the limited scope of *Gubbels v. Hoy*, concluding that it precluded the judgment of a court-martial from qualifying as a "conviction" only if the judgment was charged as a basis for deportability under former section 241(b)(4) of the Act, the only ground of deportability for

---

[5] In 1987 the Army Court of Military Review determined that *Gubbels v. Hoy*, *supra*, was "dated and no longer of precedential value" because it did not accurately reflect the ability of an alien serviceman to receive a JRAD from a military judge. *United States v. Berumen*, 24 M.J. 737, 741 n.2 (A.C.M.R. 1987) (indicating that JRADs or their functional equivalents were available in courts-martial), *petition denied*, 26 M.J. 67 (C.M.A. 1988).

[6] In a 1998 Legal Opinion, the General Counsel of the former Immigration and Naturalization Service expressed the view that Congress's elimination of the JRAD had "almost certainly deprived *Gubbels* of precedential value." INS Legal Opinion No. 98-16, Bo Cooper for Paul W. Virtue, General Counsel, to Eloise Rosas, District Counsel, Washington, D.C. (Nov. 24, 1998), *available at* 1998 WL 1806687. In the wake of IMMACT, numerous legal commentators expressed much the same view. *See* Gregory E. Fehlings, *Deportation as a Consequence of a Court-Martial Conviction*, 7 Geo. Immigr. L.J. 295, 298-99 & n.27, 311-13 (June 1993); Samuel Bettwy, *Assisting Soldiers in Immigration Matters*, 1992-APR Army Law. 3, 13 (Apr. 1992); Ira L. Frank, *Deportation of Alien Military Service Personnel*, 13 U. Haw. L. Rev. 111, 122, 135 (Summer 1991).

which Congress had made JRADs available. *Matter of F-*, *supra*, at 471-72 (distinguishing *Gubbels* and holding that the respondent's conviction for a crime involving moral turpitude by a foreign court-martial supported a charge of deportability under former section 241(a)(1) of the Act because no JRAD was available with respect to such a charge). Because Congress has now abolished the JRAD and enacted a statutory definition of a "conviction" that encompasses judgments of guilt entered by general courts-martial, we conclude that the rationale underlying *Gubbels v. Hoy* has been superseded by statute. Accordingly, we now hold that the judgments of general courts-martial retain their historical status as "convictions" for immigration purposes.

## D.  Vienna Convention

The respondent's final argument is that his conviction by general court-martial should not be treated as a "conviction" for immigration purposes because neither the military court nor his criminal defense attorney made him aware of his right to consular notification under Article 36 of the Vienna Convention.[7] The argument lacks merit. Section 101(a)(48)(A) of the Act provides that a "conviction" exists for immigration purposes upon proof that a "court" has entered a formal judgment of the alien's "guilt" in a genuine criminal proceeding. Whether an alien's procedural right to consular notification under the Vienna Convention was violated prior to the entry of such a judgment simply has no bearing on the statutory analysis. Furthermore, once the statutory elements of a valid "conviction" are proven, immigration adjudicators are bound to give effect to the judgment in removal proceedings and cannot entertain collateral challenges to it, absent an affirmative showing that the judgment is void on its face. *Doe v. Gonzales*, 484 F.3d 445, 451 (7th Cir. 2007) (citing *Mansoori v. INS*, 32 F.3d 1020, 1023-24 (7th Cir. 1994)); *Matter of Madrigal*, 21 I&N Dec. 323, 327 (BIA 1996); *Matter of Fortis*, 14 I&N Dec. 576, 577 (BIA 1974).

The Seventh Circuit has determined that Article 36 of the Vienna Convention gives foreign nationals an individually enforceable *private* right to consular notification. *Jogi v. Voges*, 480 F.3d 822, 835 (7th Cir. 2007). Even assuming that the respondent's 1997 court-martial was conducted in derogation of that right, however, it is evident that such a violation would not invalidate or otherwise vitiate his conviction for criminal law purposes, much

---

[7] Article 36, Paragraph 1(b) of the Vienna Convention requires that the authorities of any signatory State must, upon arresting or detaining a foreign national, inform the foreign national that he has a right to communicate with and have access to his country's consular officers.

less render it void on its face.  On the contrary, the Federal courts of appeals, including the Seventh Circuit, have held that neither the suppression of evidence nor the dismissal of an indictment is a proper remedy for violation of the right to consular notification.  *See, e.g.*, *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001); *United States v. Jimenez-Nava*, 243 F.3d 192, 197-98 (5th Cir. 2001); *United States v. Chaparro-Alcantara*, 226 F.3d 616, 621-22 (7th Cir. 2000);*United States v. Lombera-Camorlinga*, 206 F.3d 882, 885 (9th Cir. 2000) (en banc).  Instead, where such a right exists, it must be vindicated by means of civil litigation.  *See Jogi v. Voges*, *supra*, at 835-36.  Because violation of the right to consular notification has no effect on the validity of a conviction for criminal law purposes, it also has no effect for immigration purposes.

## IV.  CONCLUSION

In conclusion, we agree with the Immigration Judge's determination that the respondent's adjudication of guilt by a general court-martial qualified as a "conviction" under section 101(a)(48)(A) of the Act.  We therefore find no reversible error in his decision sustaining the charges of deportability.  Because the respondent raises no other issues on appeal, his appeal will be dismissed.

**ORDER:**  The appeal is dismissed.