COWEN, Circuit Judge,
dissenting.
Gourzong was not “convicted of an aggravated felony within the meaning of the definition of ‘conviction’ in § 101(a)(48)(A) of the INA.” (Maj. Op. at 141.) This statutory definition incorporates two basic requirements: (1) “a formal judgment of guilt” of the alien — (2) entered by a “court.” Regardless of whether or not *142 Gourzong’s special court-martial satisfied the first requirement (a question I need not — and do not — decide), it clearly did not meet the second requirement under the BIA’s own precedential interpretation of the term “court.” Simply put, a special court-martial does not constitute “a governmental body consisting of one or more judges who sit to adjudicate disputes and administer justice” where — in place of a legally trained and certified military judge detailed by an assigned military judge and ultimately answerable to the Judge Advocate General — an active duty member of the United States Armed Forces, who is chosen by the convening authority, returns to his or her regular military duties once the proceeding is concluded, and need not (and most likely would not) possess any legal or judicial training or experience, presides over the special court-martial. Accordingly, I must respectfully dissent.
The majority does not mention the government’s history of changing its positions throughout the course of this immigration proceeding — or its failure to brief the merits of Gourzong’s petition for review when it should have. After Gourzong appealed to the BIA, the government requested summary affirmance, asserting that the issues on appeal were squarely controlled by existing precedent, did not involve the application of precedent to novel facts, and were not so substantial as to warrant a written opinion. It asked in the alternative for affirmance in a brief one-member decision, and the BIA actually dismissed the administrative appeal in such a non-prece-dential fashion. Nevertheless, the government, in lieu of filing a brief on the merits, then asked this Court to remand for the BIA “to further consider its finding that a special court-martial, with or without a military judge present, satisfies the conventional definition of a ‘court’ such that a conviction by special court-martial, regardless of whether a military judge is present, qualifies as a conviction under the [INA]” and to determine whether there was any evidence in the record indicating that a military judge was not present (Respondent’s Motion to Remand at 1). See, e.g., Borrome v. Attorney General, 687 F.3d 150, 156 n. 4 (3d Cir. 2012) (“Now the Government is singing a different tune. ... The BIA had the opportunity to consider the issues and, at the Government’s insistence, chose not to do so.”). The Court ordered the government to brief the merits, but the government’s cursory brief merely reiterates the same arguments for remand it had set forth in the motion. Threatened with sanctions (and represented by new counsel), the government finally submitted a real merits brief. In this second brief, the government drastically changes its whole approach by withdrawing the remand requests and by indicating that the Court need not even consider Chevron deference principles, even though the government had emphasized this doctrine in its earlier submissions. While I appreciate the apologies offered by the Department of Justice’s attorney, I remain troubled by the government’s conduct in this case.
This matter, in turn, should be decided based on the administrative record now before the Court, i.e., on the basis of a special court-martial conducted without a military judge. The majority may well be correct that a military judge is typically detailed to preside over a special court-martial. Nevertheless, we should still focus on what the government has shown actually happened in Gourzong’s own special court-martial — and not what usually happens in such proceedings either now or when his court-martial convened in November of 1993 and January of 1994. Simply put, I do not believe that the government has established that any military judge was detailed to preside over a spe *143 cial court-martial that occurred more than twenty years ago. The rather meager record contained no clear references to a military judge. In fact, the IJ relied on his own personal experience as a former special court-martial judge to opine on the record that a military judge was detailed here. As Gourzong’s able pro bono counsel explains, “[t]he IJ, far from requiring DHS to prove by clear, convincing and unambiguous evidence each and every element necessary to support an order of deportation, Woodby v. INS, 385 U.S. 276, 286, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966), merely assumed evidence not in the record and for which petitioner had no means to rebut.” (Petitioner’s Brief at 5.) • As the government likewise notes, “the Board held that a conviction by special court-martial, with or without a military judge present, qualifies as a conviction by a ‘court’ under the INA.” (Respondent’s First Brief at 8 (emphasis added) (citing AR4-AR5).)
The majority places particular emphasis on this Court’s ruling in Castillo v. Attorney General, 729 F.3d 296 (3d Cir. 2013), and the open-ended notion of a “genuine criminal proceeding.” However, § 101(a)(48)(A) actually defines “a conviction” as, inter alia, “a formal judgment of guilt of the alien entered by a court” (or, if adjudication has been withheld, where (1) “a judge” or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and (2) “the judge” has ordered some form of punishment, penalty, or restraint). The “genuine criminal proceeding” approach represents an interpretation of the “formal judgment of guilt” requirement — not the “court” requirement. The BIA specifically explained that “ ‘a far more sensible reading of the statute exists: namely, that by “judgment of guilt” Congress most likely intended to refer to a judgment in a criminal proceeding.’ ” Id. at 304 (quoting In re Eslamizar, 23 I. & N. Dec. 684, 687 (BIA 2004) (en banc)). Our ruling in Castillo likewise did not specifically address this “court” language. On the contrary, we assumed that the New Jersey Municipal Court constituted a “court” under the terms of the immigration statute. In fact, we repeatedly referred to a “court” throughout our discussion of BIA case law and the “genuine criminal proceeding” approach. See, e.g., id. at 307 (“However, this does not mean that a judgment was entered in a true or genuine criminal proceeding — and therefore constituted a conviction pursuant to § 1101(a)(48)(A)— merely because a court entered a formal judgment of guilt under the requisite ‘reasonable doubt’ standard of proof and imposed a form of punishment.” (emphasis added)). In its precedential decision in In re Rivera-Valencia, 24 I. & N. Dec. 484 (BIA 2008), the BIA expressly distinguished the “genuine criminal proceeding” inquiry from the question of “whether that adjudication of guilt was entered by a ‘court,’ ” id. at 487.[1] As the IJ recognized in the current proceeding, “[t]he Board broke its analysis down into the two requirements under 101(a)(48)(A): (1) a formal judgment of guilt of the alien; (2) entered by a court.” (AR52 (citing Rivera-Valencia, 24 I. & N. Dec. at 486-88).)
Given the statutory language as well as the existing case law, the BIA’s ruling in this case should not be upheld merely because we may agree that, like general courts-martial, special courts-martial “are typically ‘genuine criminal proceedings.’ ” (Maj. Op. at 140 (citing AR4-AR5).) In other words, it is not enough to point out that the prosecution must establish guilt *144 beyond a reasonable doubt or highlight the various rights possessed by the accused in a special court-martial proceeding. In fact, such an approach would render superfluous the statutory “court” language. See, e.g., United States v. Cooper, 396 F.3d 308, 312 (3d Cir. 2005) (“It is a well known canon of statutory construction that courts should construe statutory language to avoid interpretations that would render any phrase superfluous.” (citing TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001))).
Just as it purported to define “a formal judgment of guilt” as a judgment entered in a genuine criminal proceeding, see, e.g. Castillo, 729 F.3d at 302-311 (reviewing BIA case law beginning with Eslamizar), the agency adopted its own definition of a “court” in Rivera-Valencia. Recognizing that the INA “does not define the term ‘court,’ ” the BIA gave “the word its ordinary, contemporary, and common meaning: ‘[a] governmental body consisting of one or more judges who sit to adjudicate disputes and administer justice.’ ” Rivera-Valencia, 24 I. & N. Dec. at 487 (quoting Black’s Law Dictionary 378 (8th ed. 2004)). Determining that a general court-martial satisfied this conventional definition, the BIA observed, inter alia, that a military judge presides over each general court-martial. Id. It specifically noted that “[a] military judge must be a member of a Federal or State bar whose qualifications for judicial duty have been certified by the Judge Advocate General for his or her particular branch of the service.” Id at 488 n. 3 (citing 10 U.S.C. § 826(b)). In its non-precedential disposition dismissing Gourzong’s administrative appeal, the BIA did not even mention this definition— which, in contrast, was set forth in a prec-edential agency decision. An administrative agency acts arbitrarily if it departs from an established precedent without providing a principled reason for its departure. See, e.g., Johnson v. Ashcroft, 286 F.3d 696, 700 (3d Cir. 2002). The majority attempts to minimize this definition by indicating that it may have been dicta offered in the context of rejecting an argument “that sought to cut through the open-ended inquiry and focus instead on a limited understanding of the word ‘court.’ ” (Maj. Op. at 140.) However, I have already explained why I believe this “open-ended inquiry” really implicates the “formal judgment of guilt” requirement. Exercising its expertise-in matters of immigration law, the BIA clearly — and appropriately— noted that the INA does not define the meaning of the term “court,” adopted the “ordinary, contemporary, common meaning” of this term, and then applied this general definition in the context of a general court-martial (which, according to the BIA as well as the majority, shares several similarities with a special court-martial). See, e.g., Castillo, 729 F.3d at 302 (“ ‘On the other hand, “if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency’s answer is based on a permissible construction of the statute.” ’ ” (quoting Acosta v. Ashcroft, 341 F.3d 218, 222 (3d Cir. 2003))). I fail to see why the agency (or this Court) should not apply the same definition here.[2]
A special court-martial clearly does not constitute “a governmental body consisting of one or more judges who sit to adjudicate disputes and administer justice” where a special court-martial member presides in place of a military judge. The *145 majority asserts that, “[e]ven in the instances when special courts-martial lack a military judge, they have a president with, in general, ‘the same authority and responsibility as a military judge,’ as the single-member panel of the BIA noted below.” (Maj. Op. at 140 (quoting AR5).) However, as Gourzong explains in some detail, the president of a special court-martial is no real substitute for a military judge.
On the one hand, military judges (as the BIA specifically noted in Rivera-V alencia) are licensed attorneys certified for judicial duty by the respective Judge Advocate General. Rivera-Valencia, 24 I. & N. Dec. at 488 n. 8. “The military judge of a general court-martial shall be designated by the Judge Advocate General, or his designee, of the armed force of which the military judge is a member for detail in accordance with regulations.” 10 U.S.C. § 826(c). Pursuant to the Manual for Courts-Martial, a military judge is detailed “by a person assigned as a military judge and directly responsible to the Judge Advocate General or the Judge Advocate General’s desig-nee.” R.C.M. § 503(b)(1). A commissioned officer certified as qualified for duty as a military judge of a general court-martial “may perform such duties only when he is assigned and directly responsible to the Judge Advocate General, or his designee” and may perform other duties as assigned by or with the approval of the Judge Advocate General (or designee). 10 U.S.C. § 826(c). The military judge may be changed by an authority competent to detail the military judge without cause before the court-martial is assembled or, after assembly, on account of disqualification or for good cause shown. R.C.M. § 505(e). “The convening authority may not prepare or review any report concerning the effectiveness, fitness, or efficiency of a military judge detailed to a special court-martial which relates to the performance of duty as a military judge.” R.C.M. § 104(b)(2)(B); see also id. (stating that when military judge is normally rated or the military judge’s report is reviewed by convening authority, manner in which such military judge will be rated or evaluated upon performance of duty as military judge may be prescribed in regulations which shall ensure absence of command influence); 10 U.S.C. § 826(c) (stating that, unless court-martial was convened by President or respective Secretary, convening authority is prohibited from preparing or reviewing any report on effectiveness, fitness, or efficiency of detailed military judge relating to performance as military judge). In the end, the respective Judge Advocate General has responsibility for the professional supervision of military judges. See, e.g., R.C.M. § 109(a).
On the other hand, the court-martial members are either active duty commissioned officers, warrant officers, or enlisted persons. R.C.M. § 502(a)(1). They are detailed by “the convening authority” as, “in his opinion are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament.” 10 U.S.C. § 825(d)(2). While the convening authority is prohibited from considering or evaluating the members’ performance of duty as a court-martial member in the preparation of an effectiveness, fitness, or efficiency report or any other document used to determine advancements, transfer, or retention, R.C.M. § 104(b)(1), the convening authority may, before the court-martial is assembled, change the members without showing cause (and delegate to the staff judge advocate, legal officer, or other principal assistant to the convening authority the power to excuse a certain number of members without cause), R.C.M. § 505(c)(1)(A), (B). After assembly, the convening authority may excuse members for good cause shown on the record. R.C.M. § 505(c)(2)(A)(i). In turn, the highest-ranking member of the special court-martial serves as its president. R.C.M. § 502(b)(1).
*146 Without impugning his or her intelligence, experience, or impartiality, it is clear that the president of a special court-martial would typically lack the legal (and judicial) training and experience possessed by a military judge. After all, would a logistics officer (Gourzong was assigned to a motor transport battalion) really have any experience or knowledge dealing with the sorts of legal issues that judges are regularly expected to decide, such as evi-dentiary issues? Likewise, a military judge is in large part insulated from the regular command structure insofar as he or she is specifically certified for judicial duties by the Judge Advocate General, is detailed by an assigned military judge, and is ultimately answerable to the Judge Advocate General. However, the president and the other special court-martial members are active duty officers and enlisted persons specifically chosen by the convening authority — who even makes this choice based on the authority’s own assessment of their respective qualifications. Even if they attempt to remain impartial, could such members — who return to their regular military duties once the special court-martial is concluded — really be compared to professional and independent judicial officers?[3]
Accordingly, I would grant the petition for review.

. In Castillo, we omitted from our discussion of Rivera-Valencia the BIA's own interpretation of the term "court.” See Castillo, 729 F.3d at 308.

. The majority observes that we have yet to decide whether Auer deference should be accorded to a single-member's interpretation of prior BIA precedent. I note that the government does not invoke this specific doctrine (and, on the contrary, indicates in its second brief that we need not even consider the Chevron doctrine).

. I further note that the other members of the special court-martial can object to the president's rulings on interlocutory questions of fact, and the president is authorized to consult with his or her fellow members before making a decision on such matters. R.C.M. § 801(e)(2)(B), (3)(D). The president, in turn, deliberates with the other special court-martial members to determine whether the accused is proved guilty. R.C.M. § 502(a)(2). Accordingly, a court-martial president actually appears to represent a sort of amalgamation of a civilian judge and jury foreperson. Like their civilian counterparts (who do not participate in jury deliberations), military judges do not vote with the court-martial members and are prohibited from consulting with the members except in the presence of the accused and respective counsel. 10 U.S.C. § 826(c). Likewise, their legal and interlocutory rulings are not subject to member review. R.C.M. § 801(e)(1)(A).