# Matter of Roberto CUELLAR-Gomez, Respondent

*Decided July 18, 2012*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)   A formal judgment of guilt of an alien entered by a municipal court is a "conviction" under section 101(a)(48)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(48)(A) (2006), if the proceedings in which the judgment was entered were genuine criminal proceedings. *Matter of Rivera-Valencia*, 24 I&N Dec. 484 (BIA 2008), and *Matter of Eslamizar*, 23 I&N Dec. 684 (BIA 2004), followed.

(2)   A Wichita, Kansas, municipal ordinance which recapitulates a Kansas statute prohibiting marijuana possession is a "law or regulation of a State . . . relating to a controlled substance" under section 237(a)(2)(B)(i) of the Act, 8 U.S.C. § 1227(a)(2)(B)(i) (2006).

(3)  Possession of marijuana after a prior municipal ordinance conviction for marijuana possession in violation of former sections 65-4162(a) and (b) of the Kansas Statutes Annotated is an aggravated felony under section 101(a)(43)(B) of the Act by virtue of its correspondence to the Federal felony of "recidivist possession," 21 U.S.C. § 844 (2006), provided the prior conviction was final when the second offense was committed. *Lopez v. Gonzales*, 549 U.S. 47 (2006), followed; *Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577 (2010), and *Matter of Carachuri-Rosendo*, 24 I&N Dec. 382 (BIA 2007), distinguished.

FOR RESPONDENT: Rosana Kit Wai Cheung, Esquire, and Jennifer L. Cohen, Esquire, Los Angeles, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Charles Fillinger and Justin Howard, Assistant Chief Counsel

BEFORE: Board Panel: PAULEY, MALPHRUS, and MULLANE, Board Members.

PAULEY, Board Member:

In a decision dated July 18, 2011, an Immigration Judge ordered the  respondent removed from the United States as an alien convicted of an aggravated felony and a controlled substance violation under sections 237(a)(2)(A)(iii) and (B)(i) of the Immigration and Nationality Act, 8 U.S.C. §§ 1227(a)(2)(A)(iii) and (B)(i) (2006), respectively. Both charges

of removability were based in part on a judgment entered by a Wichita, Kansas, municipal court, finding the respondent guilty of violating a city ordinance prohibiting marijuana possession. The respondent has appealed, arguing that the Wichita judgment is not a valid predicate for either removal charge. The Department of Homeland Security ("DHS") opposes the appeal. The respondent's appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of El Salvador, who was admitted to the United States on April 4, 1992, as a lawful permanent resident. On January 3, 2008, a municipal court in Wichita, Kansas, found the respondent guilty of possessing marijuana in violation of section 5.26.010 of the Wichita, Kansas, Code of Ordinances, a misdemeanor for which he was sentenced to 60 days in jail and ordered to pay a $100 fine. On September 29, 2008, a Kansas district court found the respondent guilty of possessing marijuana after a prior municipal ordinance conviction for marijuana possession, a felony violation under sections 65-4162(a) and (b) of the Kansas Statutes Annotated, for which he was sentenced to a 10-month term of imprisonment plus probation on December 4, 2008.[1]

Based on these convictions, the DHS initiated removal proceedings by filing a notice to appear charging the respondent with deportability under section 237(a)(2)(A)(iii) of the Act, as an alien convicted of an "aggravated felony," and section 237(a)(2)(B)(i), as an alien convicted of a "violation of . . . any law or regulation of a State . . . relating to a controlled substance . . . , other than a single offense involving possession for one's own use of thirty grams or less of marijuana."

Specifically, the DHS alleged that the respondent's conviction under sections 65-4162(a) and (b) of the Kansas Statutes Annotated was for a "drug trafficking crime" under 18 U.S.C. § 924(c) (2006)—and, by extension, an aggravated felony under section 101(a)(43)(B) of the Act, 8 U.S.C. § 1101(a)(43)(B) (2006)—because it corresponds to "recidivist possession," a felony punishable under the Federal Controlled Substances Act ("CSA") at 21 U.S.C. § 844(a) (2006). The DHS also maintained that each of the respondent's convictions was for a violation of the law of a State relating to a controlled substance under section 237(a)(2)(B)(i) and that the existence of two such convictions precluded the respondent from qualifying for the

---

[1] Section 65-4162(a) was subsequently repealed and replaced, along with many other Kansas statutes. In this opinion, all pertinent citations are to the version of the Kansas Statutes Annotated that was in effect when the respondent committed his offenses.

exception to deportability available to aliens convicted of a "single offense" involving simple possession of 30 grams or less of marijuana. The Immigration Judge sustained both charges of removal.

On appeal the respondent contends that the January 2008 judgment arising from his Wichita municipal court proceedings is not a valid predicate for either charge of removability and that his September 2008 conviction under sections 65-4162(a) and (b) of the Kansas Statutes Annotated is insufficient, standing alone, to establish his removability. The respondent challenges the DHS's reliance on his Wichita judgment by means of several distinct arguments. First, he asserts that the Wichita judgment is not a "conviction" within the meaning of section 101(a)(48)(A) of the Act. Alternatively, he maintains that even if the Wichita judgment is a "conviction" for immigration purposes, it does not support the section 237(a)(2)(B)(i) charge because it was for violation of a municipal ordinance rather than "any law or regulation of a State." Finally, the respondent contends that his Wichita judgment does not support the aggravated felony charge because it is not a valid predicate for a recidivist enhancement under 21 U.S.C. § 844(a). Both parties have filed briefs, and on March 7, 2012, a three-member panel of the Board heard oral argument.

## II.  ANALYSIS

### A.  Wichita Judgment as a "Conviction" Under Section 101(a)(48)(A) of the Act

At the outset, we conclude that the judgment of guilt entered against the respondent in January 2008 by the Wichita municipal court is a "conviction" under the plain language of section 101(a)(48)(A) of the Act because it is "a formal judgment of guilt of the alien entered by a court."

The respondent does not dispute either that the Wichita municipal court entered a formal judgment of guilt against him or that it is a "court" within the meaning of the Act. Instead, he maintains that the Wichita court's judgment should be discounted for immigration purposes because the proceedings in which it was entered did not afford him all of the constitutional rights that defendants are entitled to in genuine criminal proceedings. We disagree.

Under our precedents, a formal judgment of guilt entered by a court qualifies as a conviction under section 101(a)(48)(A) so long as it was entered in a "genuine criminal proceeding," that is, a proceeding that was "criminal in nature under the governing laws of the prosecuting jurisdiction." *Matter of Rivera-Valencia*, 24 I&N Dec. 484, 486-87 (BIA 2008) (quoting

*Matter of Eslamizar*, 23 I&N Dec. 684, 688 (BIA 2004)) (internal quotation marks omitted). The respondent's proceedings in Wichita municipal court fit that description.

In Kansas, municipal court judges have authority to enter judgments of guilt in marijuana possession cases and to impose fines or order the incarceration of defendants against whom judgments of guilt are entered. *See* Kan. Stat. Ann. §§ 12-4104(a)(5), 12-4106 (West 2008). In municipal court criminal cases, moreover, "[t]he issue before the court upon trial is whether the prosecution has sustained its burden to prove the charge beyond a reasonable doubt." *City of Overland Park v. Povirk*, 941 P.2d 369, 371 (Kan. 1997).[2] Furthermore, under Kansas' sentencing laws a judgment of guilt entered by a municipal court is considered a valid conviction for purposes of calculating the defendant's criminal history. *See* Kan. Stat. Ann. § 21-4710, 21-4711 (West 2008); *see also State v. Vega-Fuentes*, 955 P.2d 1235 (Kan. 1998). Under the circumstances, it is evident that the respondent's Wichita judgment was entered in a "genuine criminal proceeding" under the laws of the State of Kansas.

The respondent argues that the Wichita proceedings were not genuine criminal proceedings because they did not afford him an "absolute right to be represented by counsel," as required by the Sixth and Fourteenth Amendments to the United States Constitution. As the respondent explains, the Wichita Municipal Code provides for the appointment of counsel at public expense only if the judge determines that the defendant stands in jeopardy of incarceration and is financially unable to retain his own lawyer. *See* Wichita, Kan., Code of Ordinances §§ 1.04.065, 1.04.210 (2012); *see also* Kan. Stat. Ann. § 12-4405 (West 2008) ("If the municipal judge has reason to believe that if found guilty, the accused person might be deprived of his or her liberty and is not financially able to employ counsel, the judge shall appoint an attorney to represent the accused person.") In the respondent's view, these limitations on the right to counsel are more restrictive than those that apply in criminal cases before the Kansas district courts. The respondent's argument is based on a misconception.

Despite the respondent's assertion to the contrary, there is no "absolute" right to appointed counsel in misdemeanor prosecutions, whether in the Kansas district courts, the Wichita municipal courts, or elsewhere. *State v. Allen*, 20 P.3d 747 (Kan. 2001). The constitutional right to appointed counsel applies only to defendants who are unable to retain counsel of their own; with a few

---

[2] In *Matter of Eslamizar*, 23 I&N Dec. at 687-88, we held that a judgment of guilt entered in an Oregon "violation" proceeding was not a "conviction" for immigration purposes because the prosecution in such a proceeding was required to prove the guilt of the accused by a mere preponderance of the evidence.

exceptions not applicable here, defendants who can afford to hire their own lawyers are not entitled to representation at public expense. *United States v. Kahan*, 415 U.S. 239, 243 (1974); *State v. Zimmer*, 426 P.2d 267, 272 (Kan. 1967). Moreover, even indigent defendants have a constitutional right to appointed counsel only if they face the prospect of imprisonment in the event of conviction. *See Alabama v. Shelton*, 535 U.S. 654 (2002); *Scott v. Illinois*, 440 U.S. 367 (1979). Accordingly, the Wichita municipal courts' practice of providing counsel only to indigent defendants who face possible incarceration is consistent with the Constitution and is also consistent with general criminal practice in the Kansas district courts. *State v. Youngblood*, 206 P.3d 518 (Kan. 2009) (following *Alabama v. Shelton*, 535 U.S. 654, and holding that indigent defendants charged with misdemeanors in district court have a right to appointed counsel only if conviction places them in jeopardy of imprisonment); *see also State v. Long*, 203 P.3d 45, 48-49 (Kan. Ct. App. 2009).

The respondent also contends that his municipal court proceedings were not genuinely "criminal" because they did not afford him the right to a jury trial. Again, we disagree. Kansas, like numerous other States, has a two-tier system for the trial of municipal ordinance violations. In Kansas, such violations are first tried to a municipal court judge, sitting without a jury. Kan. Stat. Ann. § 12-4502 (West 2008). If the municipal court finds the defendant guilty, the defendant then has a constitutional and statutory right to appeal to a State district court for a trial de novo before a jury. Kan. Stat. Ann. § 22-3609(4) (West 2008); *see also City of Wichita v. Bannon*, 154 P.3d 1170, 1173 (Kan. Ct. App. 2007) (holding that a defendant being tried for a municipal ordinance violation that is punishable by a term of imprisonment of more than 6 months has a constitutional and statutory right to a trial by jury). The Supreme Court has held that a two-tier system virtually identical to that applied in Kansas did not violate the accused's constitutional right to a jury trial. *See Ludwig v. Massachusetts*, 427 U.S. 618, 625-28 (1976). The United States Court of Appeals for the Tenth Circuit has also specifically upheld the Kansas two-tier procedure in the face of a constitutional challenge. *M.S. News Co. v. Casado*, 721 F.2d 1281, 1294 (10th Cir. 1983). Since the respondent had a right to a trial de novo in State district court, his bench trial in Wichita municipal court qualified as a genuine criminal proceeding.

Finally, the respondent argues that his Wichita conviction was unconstitutional because he was not provided with counsel or advised by the municipal court that the conviction might result in serious immigration consequences. *See Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). However, it is well settled that the Immigration Judges and this Board cannot entertain

collateral attacks upon State court judgments. *E.g.*, *Waugh v. Holder*, 642 F.3d 1279, 1282-83 (10th Cir. 2011); *Margalli-Olvera v. INS*, 43 F.3d 345, 355 (8th Cir. 1994); *Matter of Madrigal*, 21 I&N Dec. 323, 327 (BIA 1996). If the respondent believes his Wichita conviction is unconstitutional, then his remedy is to seek postconviction relief in the Kansas courts. The conviction remains effective for immigration purposes, however, unless and until it is vacated by a court of competent jurisdiction. *See Matter of Madrigal*, 21 I&N Dec. at 327.

In sum, we conclude that the Wichita municipal court proceedings at issue here were "genuine criminal proceedings" within the meaning of our precedents. The judgment of guilt resulting from those proceedings is therefore a "conviction" under section 101(a)(48)(A) of the Act.[3]

### B. Removability Under Section 237(a)(2)(B)(i) of the Act

Having determined that the respondent's Wichita judgment is a "conviction" for immigration purposes, we must now decide whether it is a valid predicate for the removal charges. We begin with the charge under section 237(a)(2)(B)(i) of the Act, which provides in relevant part that an alien is removable if he is "convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance." According to the respondent, his Wichita conviction cannot support such a charge because it was for violating a municipal ordinance rather than a "law or regulation of a State."[4] We disagree.

Wichita is a political subdivision of the State of Kansas, formed by charter from the State and delegated the autonomous authority to administer *the State's* local affairs. *See* Kan. Const. art. 2, § 21 ("The legislature may confer powers of local legislation and administration upon political

---

[3] In so concluding, we do not purport to address municipal or local judgments other than the particular Wichita judgment before us. Because such judgments vary widely across jurisdictions, each must be examined on its own merits to determine whether it was entered in a "genuine criminal proceeding."

[4] As noted previously, the respondent also sustained a September 2008 conviction for marijuana possession under sections 65-4162(a) and (b) of the Kansas Statutes Annotated. There is no dispute that this conviction was for "a violation of . . . any law . . . of a State . . . relating to a controlled substance," but as the respondent correctly points out, the record does not reflect the quantity of marijuana he was convicted of possessing. Thus, unless the respondent's Wichita conviction is also a valid predicate for a section 237(a)(2)(B)(i) charge, we cannot discount the possibility, although we do not decide the issue, that he falls within the exception to deportability applicable to aliens convicted of "a *single* offense involving possession for one's own use of thirty grams or less of marijuana." (Emphasis added.)

subdivisions."). Like other municipalities, Wichita is not an independent sovereign, but rather a "subordinate governmental instrumentalit[y] created by the State to assist in the carrying out of state governmental functions." *Reynolds v. Sims*, 377 U.S. 533, 575 (1964); *see also City of Columbus v. Ours Garage & Wrecker Service, Inc.*, 536 U.S. 424, 437 (2002) (recognizing that "local governmental units are created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them in its absolute discretion" (quoting *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 607-08 (1991)) (internal quotation mark omitted)); *State ex rel. Kline v. Unified Bd. of Comm'rs of Unified Government of Wyandotte County/Kansas City*, 85 P.3d 1237, 1247 (Kan. 2004) ("Under our form of state government, the State is sovereign and cities have no inherent power except as granted by the State."). The status of municipalities as subordinate instrumentalities of State power is clearly reflected in several lines of constitutional jurisprudence. For instance, double jeopardy principles forbid a State prosecutor from bringing criminal charges against a defendant who has already been tried for the same conduct in a municipal court. *See Waller v. Florida*, 397 U.S. 387, 393-95 (1970).[5]

We conclude that the ambiguous reference in section 237(a)(2)(B)(i) to "any law or regulation of a State" most naturally encompasses laws promulgated by a State through its political subdivisions. *Cf. Wisconsin Public Intervenor v. Mortier*, 501 U.S. at 608 (holding that a Federal statute that exempted the "States" from Federal preemption in the regulation of pesticides implicitly exempted political subdivisions of the States as well, noting that "[t]he exclusion of political subdivisions cannot be inferred from the express authorization to the 'State[s]' because political subdivisions are components of the very entity the statute empowers"). Section 5.26.010 of the Wichita Code of Ordinances is thus "a law or regulation of a State" under section 237(a)(2)(B)(i) of the Act because it is an expression of the organic sovereign power of the State of Kansas.[6]

---

[5] Likewise, the Supremacy Clause of the Constitution, which makes Federal law the supreme law of the land as against "the Constitution or Laws of any *State*," applies with equal force to laws enacted by political subdivisions of the States. U.S. Const. art. VI, cl.2 (emphasis added); *see also, e.g.*, *Wisconsin Public Intervenor v. Mortier*, 501 U.S. at 605; *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985).

[6] The Act does not define the term "State," except to specify that the term "includes" the District of Columbia, Puerto Rico, Guam, the Virgin Islands, and the Commonwealth of the Northern Mariana Islands. Section 101(a)(36) of the Act. Congress does not intend that list to be exhaustive or exclusive, however, since it uses the term "includes" rather than "means" and does not list any of the 50 States themselves. Indeed, in *Wisconsin Public Intervenor v. Mortier*, 501 U.S. at 606, the Court concluded that the term "State" included political

(continued...)

Invoking the "Home Rule" Amendment to the Kansas Constitution, *see* Kan. Const. art. 12, § 5, the respondent maintains that Wichita ordinances are independent from Kansas law and that the ordinance in question is no more a law of the State of Kansas than a Kansas statute is a law of the United States. We find that argument unpersuasive.

It is true that the "Home Rule" Amendment empowers Kansas municipalities to enact ordinances that supplement or complement the criminal laws passed by the State legislature. *E.g.*, *City of Wichita v. Hackett*, 69 P.3d 621 (Kan. 2003) (upholding a Wichita ordinance criminalizing the operation of a bicycle while intoxicated, despite the absence of any State statute prohibiting such conduct, because the ordinance supplemented but did not conflict with State law). Crucially, however, municipalities cannot pass ordinances that are preempted by uniformly applicable State criminal laws. *See* Kan. Const. art. 12, § 5(b); *cf. also City of Junction City v. Cadoret*, 946 P.2d 1356 (Kan. 1997) (holding that a city ordinance may not make a third or subsequent driving under the influence crime a misdemeanor when State law makes it a felony). The respondent does not suggest, for instance, that the Home Rule Amendment would allow Wichita to pass an ordinance *legalizing* marijuana possession despite the existence of a State statute criminalizing such conduct.

In our view, a municipal ordinance that supplements or complements the laws passed by the State Legislature is still a "law . . . of a State" because it is ultimately an expression of State sovereignty. In any event, the Wichita ordinance at issue merely recapitulates the generally applicable Kansas law relating to marijuana possession, so we have no need to decide whether an alien could be rendered deportable under section 237(a)(2)(B)(i) on the basis of a municipal conviction for an offense with no analog in the State criminal code.

We also do not accept the respondent's argument that Wichita ordinances stand in the same relationship to Kansas law as Kansas statutes do to Federal law. Although the Home Rule Amendment gives municipalities substantial autonomy in regulating their own affairs, Wichita nevertheless remains a creature of Kansas law; it exists at the pleasure of the State of Kansas and exercises its authority through a delegation of State sovereignty.

By contrast, under our Federal system, Kansas stands on an equal footing with the National Government and is sovereign with respect to all matters not explicitly reserved to the National Government by the Constitution. U.S. Const. amend. X. Kansas is not a mere creature of Federal law, nor does

(...continued)
subdivisions, even though the statute under review contained a statutory definition of "State" very similar to that in section 101(a)(36).

it derive its authority from a delegation of sovereign Federal power. *Heath v. Alabama*, 474 U.S. 82, 89 (1985). Thus, as the Supreme Court has explained, "[T]he apt analogy to the relationship between municipal and state governments is to be found in the relationship between the government of a Territory and the Government of the United States," *not* in the relationship between a State government and the National Government. *Waller v. Florida*, 397 U.S. at 392-93.

The respondent also contends that interpreting the phrase "any law or regulation of a State" to include municipal ordinances would run afoul of the presumption that Congress acts deliberately when it "includes particular language in one section of a statute but omits it in another section of the same Act." *E.g.*, *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)). In support of that argument, the respondent points to two provisions of section 237(a) in which State laws and local laws are referenced in the disjunctive, thereby suggesting that Congress understands them to be mutually exclusive. See section 237(a)(2)(E)(i) of the Act (providing for the deportability of individuals who are convicted of crimes of violence committed "against a person who is protected from that individual's acts under the domestic or family violence laws of . . . any State . . . or unit of local government"); section 237(a)(6)(A) of the Act (providing for the deportability of "[a]ny alien who has voted in violation of any Federal, State, or local constitutional provision, statute, ordinance, or regulation"). According to the respondent, these specific references to local laws or ordinances give rise to the negative inference that Congress deliberately omitted such references from the language of section 237(a)(2)(B)(i). We draw no such inference for several reasons.

First, "The *Russello* presumption—that the presence of a phrase in one provision and its absence in another reveals Congress' design—grows weaker with each difference in the formulation of the provisions under inspection." *Clay v. United States*, 537 U.S. 522, 532 (2003) (quoting *City of Columbus v. Ours Garage & Wrecker Service, Inc.*, 546 U.S. at 435-36) (internal quotation marks omitted). The "provisions under inspection" here—section 237(a)(2)(B)(i) on the one hand and sections 237(a)(2)(E)(i) and (6)(A) on the other—bear scant resemblance to one another; they pertain to entirely different subject-matter areas and are grammatically and syntactically dissimilar. Given these marked differences, we do not consider the language of sections 237(a)(2)(E)(i) and (6)(A) to be a reliable index of the legislative intent underlying section 237(a)(2)(B)(i).

Furthermore, the relevant language of section 237(a)(2)(B)(i) was codified 10 years *before* the enactment of sections 237(a)(2)(E)(i) and (6)(A).[7] It is well settled that "later-enacted laws . . . do not declare the meaning of earlier law." *Almendarez–Torres v. United States*, 523 U.S. 224, 237 (1998) ("[W]e do not find in [later-enacted laws] any forward looking legislative mandate, guidance, or direct suggestion about how courts should interpret the earlier provisions.")  The *Russello* presumption is at its weakest when the statutory sections being compared were enacted at different times by different Congresses.  *See Gomez-Perez v. Potter*, 553 U.S. 474, 486 (2008) (finding the *Russello* presumption inapplicable where the statutory sections being compared pertained to related subject matter but were enacted several years apart); *see also United States v. Boender*, 649 F.3d 650, 660-61 (7th Cir. 2011) (same); *United States v. O'Donnell*, 608 F.3d 546, 552 (9th Cir. 2010) (same), *cert. denied*, 131 S. Ct. 1837 (2011).

Finally, interpreting section 237(a)(2)(B)(i) to encompass municipal ordinance violations does not render superfluous the specific references to local laws or ordinances in sections 237(a)(2)(E)(i) and (6)(A).  Those latter provisions were enacted as part of the comprehensive amendments of 1996, which were designed to be exceedingly broad.  *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Div. C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA").  There is every reason to believe that the language of the IIRIRA amendments included specific references to local laws, not because Congress considered local laws to be distinct from State laws, but rather because Congress wished to remove all doubt as to the breadth of its intentions, thereby mitigating the risk that reviewing courts and administrative adjudicators would construe its language narrowly.  *See Kawashima v. Holder*, 132 S. Ct. 1166, 1174 (2012) (holding that technically redundant language is not superfluous if it was added to "remove any doubt" as to Congress' intentions); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 226 (2008) (same).

---

[7] The phrase "any law or regulation of a State . . . relating to a controlled substance" was first introduced into the Act by section 1751(a) of the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207, 3207-47, a statute that dramatically expanded the Federal penalty scheme for drug offenders.  *See generally Gozlon-Peretz v. United States*, 498 U.S. 395, 401-04 (1991) (discussing the broad scope and enforcement-oriented purpose of the Anti-Drug Abuse Act of 1986).  The legislative history of the Anti-Drug Abuse Act of 1986 does not further explain Congress' intent in using the phrase "law or regulation of a State" in section 237(a)(2)(B)(i), and the respondent has not invoked any legislative history to support his position.  Sections 237(a)(2)(E)(i) and (6)(A) were added to the Act pursuant to sections 350 and 347, respectively, of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-638 to 3009-640 (effective Apr. 1, 1997).

In light of the foregoing, we conclude that the respondent's January 2008 Wichita conviction for marijuana possession renders him deportable as an alien convicted of a violation of any law or regulation of a State relating to a controlled substance. Section 237(a)(2)(B)(i) of the Act. Because the respondent also sustained a second marijuana possession conviction in September 2008, he is not covered by the exception to deportability for an alien convicted of a "*single* offense involving possession for one's own use of thirty grams or less of marijuana." *Id.* Under the plain language of section 237(a)(2)(B)(i) of the Act, two marijuana possession offenses cannot constitute a "single offense."

## C. Aggravated Felony

The respondent's deportability under section 237(a)(2)(B)(i) of the Act is sufficient to carry the DHS's burden of proving removability. Nevertheless, it is necessary for us to decide whether the respondent has sustained an "aggravated felony" conviction, because the existence of such a conviction would also render him ineligible for cancellation of removal and most other forms of relief. *See, e.g.*, section 240A(a)(3) of the Act, 8 U.S.C. § 1229b(a)(3) (2006).

Section 101(a)(43)(B) of the Act defines the term "aggravated felony" to include "illicit trafficking in a controlled substance . . . , including a drug trafficking crime (as defined in section 924(c) of title 18)." In turn, 18 U.S.C. § 924(c)(2) defines a "drug trafficking crime" to mean "any felony punishable under," inter alia, "the Controlled Substances Act (21 U.S.C. 801 et seq.)." Interpreting these provisions, the Supreme Court has held that a State drug offense qualifies as a "drug trafficking crime"—and, by extension, an aggravated felony—if its elements correspond to or include all the elements of an offense that carries a maximum term of imprisonment exceeding 1 year under the Controlled Substances Act ("CSA"). *Lopez v. Gonzales*, 549 U.S. 47, 56 & n.7, 57 (2006) ("[A] state offense whose elements include the elements of a felony punishable under the CSA is an aggravated felony.").[8]

According to the Immigration Judge, the offense underlying the respondent's September 2008 conviction under sections 65-4162(a) and (b) of the Kansas Statutes Annotated is an aggravated felony because

---

[8] Whether a crime is punishable (or punished) under State law by a term of imprisonment of more than 1 year is not relevant to the aggravated felony inquiry: "Under the rationale of *Lopez v. Gonzales*, [549 U.S. 47], whether a State drug offense is a 'drug trafficking crime' aggravated felony turns solely on its correspondence to a Federal felony, not on how the State graded the offense." *Matter of Aruna*, 24 I&N Dec. 452, 454 (BIA 2008). The respondent's appellate argument to the contrary is foreclosed.

it corresponds to "recidivist possession," which the CSA punishes as a felony. *See Lopez v. Gonzales*, 549 U.S. at 55 n.6 (acknowledging that "state possession crimes that correspond to felony violations of [the CSA], such as . . . recidivist possession, clearly fall within the definitions used by Congress in 8 U.S.C. § 1101(a)(43)(B) and 18 U.S.C. § 924(c)(2)" (citation omitted)). To be precise, 21 U.S.C. § 844(a)—the section of the CSA dealing with simple possession offenses—states in pertinent part that a person may be sentenced as a felon "if he commits [a simple possession] offense after . . . a prior conviction for any drug, narcotic, or chemical offense chargeable under the law of any State, has become final."

We have previously determined that a State conviction for simple possession of a controlled substance cannot qualify as an aggravated felony conviction by virtue of its correspondence to "recidivist possession" unless "the alien's status as a recidivist drug offender was either admitted by the alien or determined by a judge or jury" in the State criminal proceedings. *Matter of Carachuri-Rosendo*, 24 I&N Dec. 382, 391, 394 (BIA 2007) ("[A] State conviction cannot 'proscribe conduct punishable as' recidivist possession [within the meaning of *Lopez v. Gonzales*] unless the State successfully sought to impose punishment for a recidivist drug conviction."); *see also Matter of Thomas*, 24 I&N Dec. 416 (BIA 2007). Upon review, the Supreme Court agreed, holding that "when a defendant has been convicted of a simple possession offense that has not been enhanced based on the fact of a prior conviction, he has not been 'convicted' . . . of a 'felony punishable' as such 'under the Controlled Substances Act,'" as required for aggravated felony treatment. *Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577, 2589 (2010).

Despite the foregoing limitations, the Supreme Court has clarified that "it is still true that recidivist simple possession offenses charged and prosecuted as such 'clearly fall' within the definition of an aggravated felony." *Carachuri-Rosendo v. Holder*, 130 S. Ct. at 2585 n.10 (quoting *Lopez v. Gonzales*, 549 U.S. at 55 n.6).[9] Thus, the question before us here is whether

---

[9] The Supreme Court "observe[d] that a reading of this statutory scheme that would apply an 'aggravated' or 'trafficking' label to *any* simple possession offense is, to say the least, counterintuitive and 'unorthodox.'" *Carachuri-Rosendo v. Holder*, 130 S. Ct. at 2585 (quoting *Lopez v. Gonzales*, 549 U.S. at 54 ). We recognize the Court's point, but we are obliged to apply the statutory scheme as written.

The Supreme Court found it "unorthodox" that Carachuri would be labeled an aggravated felon when the conviction under review involved the possession of a "trivial amount of a prescription drug," a State law misdemeanor for which he was sentenced to a mere 10 days in jail. *Id.* By contrast, the respondent was convicted of a State law *felony* involving the possession of a *nonprescription* drug and was sentenced to *10 months* in jail.

the respondent has been convicted of a recidivist possession offense that was "charged and prosecuted as such." We conclude that he was.

The respondent's September 2008 conviction under sections 65-4162(a) and (b) of the Kansas Statutes Annotated resulted from proceedings in which he was charged and sentenced as a recidivist. Specifically, the Complaint/Information that commenced those proceedings charged the respondent as follows:

> [O]n or about the 24th day of January, 2008, A.D., in the County of Sedgwick, State of Kansas, one ROBERTO E. CUELLAR-GOMEZ did then and there unlawfully, intentionally possess a controlled substance, to-wit: marijuana at . . . Wichita, Sedgwick County, Kansas, after having been convicted previously of Possession of Marijuana, on the 3rd day of January, 2008, Case No. 07DR2218, in the City of Wichita, Kansas Municipal Court.

The Judgment reflects that the respondent entered a plea of guilty, and the court identified the offense of conviction as "Possession of Marijuana after Previous Conviction." Further, for sentencing purposes the court classified the crime as a severity level 4, nonperson felony, a denomination that was consistent only with a recidivism finding.

The elements of the respondent's offense correspond to the elements of "recidivist possession" under the CSA. Like 21 U.S.C. § 844(a), Kansas law requires proof beyond a reasonable doubt that possession of a controlled substance was at least "knowing," *see State v. Washington*, 772 P.2d 768, 771 (Kan. 1989), and both the CSA and Kansas law define the concept of "possession" to encompass actual and constructive possession. *Compare United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002), *and United States v. Conway*, 73 F.3d 975, 982 (10th Cir. 1995), *with State v. Washington*, 772 P.2d at 771. Furthermore, the respondent's Wichita conviction was for marijuana possession, a "drug, narcotic or chemical offense" under 21 U.S.C. § 844(c),[10] and the respondent concedes that his subsequent marijuana possession offense was committed after the Wichita conviction had become "final" by virtue of the expiration of the statutory appeal period prescribed by section 22-3609(2) of the Kansas Statutes Annotated.[11]

---

[10] The phrase "drug, narcotic, or chemical offense" is defined by 21 U.S.C. § 844(c) to include "any offense which proscribes the possession . . . [of] any substance the possession of which is prohibited under this subchapter," a class of substances that includes marijuana.

[11] At the time of the respondent's January 2008 Wichita conviction, a defendant convicted of violating a municipal ordinance in Kansas had 10 business days in which to appeal that conviction as of right for a trial de novo in the district court for the county encompassing

(continued...)

As the respondent points out, the CSA requires that a defendant charged with recidivism must be served in advance with an "enhancement information" specifying the prior convictions to be relied upon. 21 U.S.C. § 851(a) (2006). Furthermore, a Federal drug defendant charged with recidivism has a right to challenge the validity of his prior convictions (provided they are reasonably recent) and to require the Government to come forward with proof of them. 21 U.S.C. § 851(c). As we explained in *Matter of Carachuri-Rosendo*, 24 I&N Dec. at 391, these requirements provide defendants with "notice and an opportunity to be heard on whether recidivist punishment is proper," rights that we consider to be "part and parcel of what it means for a crime to be a 'recidivist' offense."

Here, the charge set forth in the Complaint/Information, quoted above, provided the respondent with pretrial notice that the State government was seeking a recidivist enhancement against him and also identified the prior conviction with particularity. Furthermore, Kansas drug defendants who dispute the existence or validity of prior convictions have a right to challenge the convictions and to require the government to prove those convictions to the sentencing judge. Kan. Stat. Ann. § 21-4715 (West 2008); *see also State v. Delacruz*, 899 P.2d 1042 (Kan. 1995). The procedures specified by section 21-4715 of the Kansas Statutes Annotated are not as elaborate as those described in 21 U.S.C. § 851, but they are sufficient to establish that the respondent had notice that he was facing a recidivist enhancement, as well as a meaningful opportunity to object to the propriety of such an enhancement and to put the government to its proof.[12]

_____

(...continued)
the relevant municipality, with the 10-day period commencing on the date when the municipal court announced its judgment. Kan. Stat. Ann. §§ 12-4602, 22-3609, 22-3610, 60-206(a)(1) (West 2008); *see also City of Derby v. Haskins*, 3 P.3d 557 (Kan. Ct. App. 2000); *Paletta v. City of Topeka*, 893 P.2d 280 (Kan. Ct. App. 1995).

[12] We have not required an exact correspondence between State recidivism procedures and those prescribed by the CSA. *See Matter of Carachuri-Rosendo*, 24 I&N Dec. at 391 ("It is not necessary . . . for the *structure* of the underlying State law to be comparable to the structure of the CSA. *Lopez v. Gonzales*, [549 U.S. 47], requires a focus on a counterpart 'offense,' not a counterpart law."). Moreover, State recidivism procedures need not "categorically match" those required by 21 U.S.C. § 851, because the categorical approach is concerned with establishing a correspondence between the "elements" of State and Federal offenses. *James v. United States*, 550 U.S. 192, 202 (2007) (holding that the categorical approach asks "whether the *elements of the* [*State*] *offense* are of the type that would justify its inclusion" within a Federal category of crimes); *cf. United States v. Velasquez-Bosque*, 601 F.3d 955, 963 (9th Cir. 2010) (holding that "[t]he availability of an affirmative defense is not relevant to the categorical analysis" because

(continued...)

The respondent's main argument in opposition to the aggravated felony charge is similar to that which he advanced in support of his challenge to the section 237(a)(2)(B)(i) charge. Specifically, the respondent maintains that his Wichita conviction could not be a valid predicate for a recidivism charge under the CSA because 21 U.S.C. § 844(a) requires that a prior conviction be for an offense "chargeable under the law of any *State*." According to the respondent, his Wichita offense does not fit that description because it was prosecuted as a municipal ordinance violation rather than as a violation of State law. We do not agree.

Under the plain language of 21 U.S.C. § 844(a), a conviction is a valid predicate for a recidivist enhancement if it was for an otherwise qualifying crime that was "chargeable under the law of any State." We are not aware of any Federal court decision interpreting that phrase as it appears in § 844(a).[13] In common legal parlance, however, the term "chargeable" simply means "capable or liable of being charged as a criminal offense." *Black's Law Dictionary* 249 (8th ed. 2004). Thus, the relevant question under 21 U.S.C. § 844(a) is not whether the respondent was convicted under a particular State law, but rather whether his offense of conviction was *capable of being charged under* such a law.[14] In the respondent's case, the answer to that question is clearly yes.

Under Kansas law, municipal and State courts have concurrent jurisdiction over offenses that violate both a city ordinance and a parallel State statute,

---

(...continued)

an affirmative defense is not an offense "element"), *cert. denied*, 132 S. Ct. 1727 (2012). The requirements of 21 U.S.C. § 851 are not "elements" of an offense because they need not be proven to a jury beyond a reasonable doubt. *Accord Jones v. United States*, 526 U.S. 227, 232 (1999) (holding that offense "elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt").

[13] The phrase "chargeable under State law" also appears in the RICO statute, 18 U.S.C. § 1961(1)(A), which defines "racketeering activity" as "any act or threat involving murder, kidnapping, [etc.], which is *chargeable under State law* and punishable by imprisonment for more than one year." (Emphasis added.) Courts have interpreted the term "chargeable" very broadly in the context of that statute, holding that it merely requires the defendant's conduct to have been of a type that the State deems criminal in a generic sense, even if the State would not have permitted the conduct to be prosecuted in a particular case because of constitutional, procedural, or evidentiary restrictions. *E.g.*, *United States v. Coonan*, 938 F.2d 1553, 1563-64 (2d Cir. 1991); *United States v. Paone*, 782 F.2d 386, 393-94 (2d Cir. 1986).

[14] Similarly, a conviction for a local ordinance violation is counted as a valid prior conviction under the criminal history provisions of the Federal Sentencing Guidelines if the underlying offense was also a violation of State criminal law. *See* U.S.S.G. § 4A1.2(c)(2); *see also United States v. Gray*, 126 F.3d 1109, 1110-11 (8th Cir. 1997); *United States v. Hooks*, 65 F.3d 850, 855 (10th Cir. 1995).

including misdemeanor marijuana possession offenses. *See* Kan. Stat. Ann. § 12-4104(a)(5). Moreover, a city police officer who arrests a suspect within city limits has discretion whether to file charges in municipal court or State district court. *E.g.*, *State v. Wright*, 995 P.2d 416, 417-18 (Kan. Ct. App. 2000); *State v. Frazier*, 736 P.2d 956, 957-58 (Kan. Ct. App. 1987). Thus, even if we assume that a Wichita ordinance is not a "law of any State" within the meaning of the CSA, the respondent's offense was nevertheless chargeable under such a law. Accordingly, we conclude that the respondent's Wichita conviction is a valid predicate for a recidivist enhancement under 21 U.S.C. § 844(a).

According to the respondent, focusing on whether his offense *could have been charged* under State law is impermissible because it is a "hypothetical" inquiry of the sort proscribed by the Supreme Court in *Carachuri-Rosendo v. Holder*, 130 S. Ct. at 2586-89. We find this argument unpersuasive. In that case, the Government treated Carachuri-Rosendo as if he had been "convicted" of all the elements of recidivist possession, even though recidivism had never been alleged or proven in his State trial, simply because a Federal prosecutor could hypothetically have brought a recidivist possession charge against a person with his criminal history. From the Supreme Court's point of view, the problem with *that* sort of hypothetical approach is that it "introduces a level of conjecture" into what should be a "categorical" inquiry, concocting a "fictional federal felony" out of a defendant's overall criminal history and then treating the defendant as if he had been "convicted" of that fictional offense, even though its elements were never admitted by the defendant or proven to a jury beyond a reasonable doubt. *Carachuri-Rosendo v. Holder*, 130 S. Ct. at 2588; *see also Matter of Carachuri-Rosendo*, 24 I&N Dec. at 393 (rejecting the "hypothetical" approach because it "would authorize Immigration Judges to collect a series of disjunctive facts about the respondent's criminal history, bundle them together for the first time in removal proceedings, and then declare the resulting package to be 'an offense' that could have been prosecuted as a Federal felony").

Here, by contrast, we treat the respondent as "convicted" of *only* those facts that were proven beyond a reasonable doubt (or admitted) in his Kansas criminal proceedings. The respondent was charged, convicted, and sentenced *as a recidivist* in Kansas, and whether his prior offense was "chargeable" under Kansas law is not a "hypothetical" or conjectural question, but rather a factual and legal one, the answer to which is readily ascertained by reference to the State's statutory and decisional law.[15]

---

[15] We take administrative notice of the content of Kansas law. 8 C.F.R. § 1003.1(d)(3)(iv) (2012); *see also Lamar v. Micou*, 114 U.S. 218, 223 (1885) ("The law of any state of the

(continued...)

In light of the foregoing, we conclude that the respondent stands convicted of an aggravated felony because the elements of the Kansas offense of which he was convicted in September 2008 correspond categorically to the elements of recidivist possession under 21 U.S.C. § 844(a), a Federal felony.

## IV.  CONCLUSION

In conclusion, the respondent's January 2008 Wichita conviction provides a valid factual basis for the removal charges in this matter.  Specifically, the Wichita judgment is a "conviction" under section 101(a)(48)(A) of the Act; a conviction for "violation of . . . any law or regulation of a State" within the meaning of section 237(a)(2)(B)(i) of the Act; and a valid predicate for a recidivist possession charge under 21 U.S.C. § 844(a).  Accordingly, because the respondent is removable as charged and was properly found ineligible for all requested relief, his appeal will be dismissed.

**ORDER:**  The appeal is dismissed.

---

(...continued)

Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof."); *Saffold v. McGraw-Edison Co.*, 566 F.2d 621, 623 (8th Cir. 1977) (same); *Parker v. Parker*, 82 F.2d 575, 577 (10th Cir. 1936) (same).