**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

FERNANDO DIAZ-QUIRAZCO,
*Petitioner*,

v.

WILLIAM P. BARR, Attorney General,
*Respondent.*

No. 16-72387

Agency No.
A200-877-802

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 11, 2018
Portland, Oregon

Filed July 23, 2019

Before: Raymond C. Fisher, Richard R. Clifton,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan;
Dissent by Judge Fisher

## SUMMARY[*]

### Immigration

Denying Fernando Diaz-Quirazco's petition for review of a decision of the Board of Immigration Appeals, the panel: (1) deferred to the BIA's interpretation that the categorical approach does not apply to determining whether an alien's violation of a protection order makes him ineligible for cancellation of removal; and (2) deferred to the BIA's conclusion that the Immigration and Nationality Act's definition of "conviction" does not require an underlying offense to be a labeled a crime as long as the proceedings are criminal in nature.

The BIA concluded that Diaz-Quirazco was ineligible for cancellation of removal on the basis that an Oregon Court had entered a judgment against him of Contempt of Court under Oregon Revised Statutes § 33.015 for violating a restraining order.

First, the panel deferred, under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), to the BIA's interpretation, in *Matter of Medina-Jimenez*, 27 I. & N. Dec. 399 (BIA 2018), and *Matter of Obshatko*, 27 I. & N. Dec. 173 (BIA 2017), that 8 U.S.C. § 1229b(b)(1)(C), the provision that renders an alien ineligible for cancellation of removal if the alien has been "convicted of an offense under section . . . 1227(a)(2)," does not require analysis under the categorical approach to determine whether an alien's violation of a protection order renders him convicted of an

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

offense under § 1227(a)(2)(E)(ii), the statute that provides that an alien is removable if a court determines he "has engaged in conduct that violates a protection order."

Under *Chevron* step one, the panel concluded that the presence of the word "convicted" in § 1229b(b)(1)(C) and its absence from § 1227(a)(2)(E)(ii), renders the statutory language ambiguous regarding the applicability of the categorical approach. Under step two of *Chevron*, the panel concluded the BIA's interpretation is reasonable and consistent with the statute, explaining that the BIA articulated a two-step approach for analyzing this issue: (1) whether the offense resulted in a "conviction," as defined by 8 U.S.C. § 1101(a)(48)(A); and (2) whether the State court found that the alien engaged in conduct that violates the relevant portion of a protection order, as directed by § 1227(a)(2)(E)(ii).

Second, the panel accorded *Chevron* deference to the BIA's interpretation that § 1101(a)(48)(A), which defines "conviction," does not require the underlying offense to be labeled as a crime so long as the proceeding was "criminal in nature." As relevant here, the statute defines a conviction as a "formal judgment of guilt of the alien entered by a court." Observing that the word "criminal" is conspicuously absent from that definition, the panel concluded that the text is ambiguous as to what formalities a judgment of guilt must contain. Further, the panel concluded that the BIA's construction of "conviction" is reasonable because it requires that the proceeding contain constitutional safeguards normally attendant upon a criminal adjudication.

Next, the panel concluded that Diaz-Quirazco's judgment qualified as a conviction under § 1101(a)(48)(A), explaining that the penalty for contempt was punitive in nature and that, apart from the right to a jury trial, Diaz-

Quirazco was entitled to constitutional and statutory protections that a defendant would be entitled to in a criminal proceeding involving equivalent punitive sanctions.

Finally, the panel concluded that, although the BIA had not yet decided *Obshatko* and *Medina-Jimenez* when it issued its decision in Diaz-Quirazco's case and the court generally only considers the grounds relied on by the agency, remand was not appropriate because the BIA's decision could be sustained upon its reasoning.

Dissenting, Judge Fisher disagreed with the majority that the BIA adequately reconciled its decision in this case with its precedential decisions interpreting the term "formal judgment of guilt" to require that a conviction arise from a proceeding that is "criminal in nature under the governing laws of the prosecuting jurisdiction." Judge Fisher would grant the petition and remand to the BIA with instructions to explain why Diaz-Quirazco's contempt proceeding was "criminal in nature under the governing laws of the prosecuting jurisdiction," or to reconsider its precedent setting forth that rule.

---

## COUNSEL

Jesse Maanao (argued), Oregon Immigration Services, Portland, Oregon, for Petitioner.

Tim Ramnitz (argued), Attorney; Shelley R. Goad, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

---

**OPINION**

CALLAHAN, Circuit Judge:

Fernando Diaz-Quirazco, a native and citizen of Mexico, petitions for review of an order from the Board of Immigration Appeals ("BIA" or "Board") dismissing Diaz-Quirazco's appeal from a decision by an immigration judge ("IJ") that Diaz-Quirazco was ineligible for cancellation of removal under the Immigration and Nationality Act ("INA") because he was convicted of a violation of a protection order. *See* 8 U.S.C. §§ 1101(a)(48)(A), 1227(a)(2)(E)(ii), and 1229b(b)(1)(C). We have jurisdiction under 8 U.S.C. § 1252.

We deny Diaz-Quirazco's petition. We conclude that the BIA's articulation in *Matter of Medina-Jimenez*, 27 I. & N. Dec. 399 (BIA 2018), and *Matter of Obshatko*, 27 I. & N. Dec. 173 (BIA 2017), that the categorical approach does not apply to determining whether an alien's violation of a protection order under § 1227(a)(2)(E)(ii) renders him convicted of an offense under § 1229b(b)(1)(C), is entitled to *Chevron* deference. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). Additionally, we defer under *Chevron* to the BIA's conclusion that § 1101(a)(48)(A) does not require that the underlying offense be labeled a crime as long as the proceedings are "criminal in nature" and contain "constitutional safeguards normally attendant upon a criminal adjudication." *See Matter of Eslamizar*, 23 I. & N. Dec. 684, 687, 688 (BIA 2004) (en banc); *Matter of Cuellar-Gomez*, 25 I. & N. Dec. 850, 851–53 (BIA 2012). We also agree with the BIA's decision that Diaz-Quirazco is ineligible for cancellation of removal, and we conclude that the BIA's decision can stand based on its reasoning and we need not remand.

I.

A.

Diaz-Quirazco claims he entered the United States without inspection in 1997. Diaz-Quirazco and Georgina Martinez-Gonzalez have a child together, who was born in Oregon in September 2003. On July 20, 2010, Martinez-Gonzalez filed a Petition for Restraining Order to Prevent Abuse under the Family Abuse Prevention Act ("FAPA"), Or. Rev. Stat. ("ORS") §§ 107.700–107.735 (2009).

In the petition, Martinez-Gonzalez stated, through an interpreter, that she feared imminent abuse by Diaz-Quirazco and that Diaz-Quirazco had forced himself into her home, forced her to engage in sexual intercourse with him, threatened her with a kitchen knife, physically and verbally abused her in front of their child, and threatened to harm their child. The Circuit Court of the State of Oregon for the County of Marion (the "Oregon Court") granted Martinez-Gonzalez's petition for a restraining order to prevent abuse under FAPA (the "Restraining Order"). The Restraining Order included a "no contact" provision that "restrained (prohibited) [Diaz-Quirazco] from . . . [c]ontacting, or attempting to contact, [Martinez-Gonzalez] in person directly or through third parties."

On September 12, 2010, the Marion County Sheriff's Office responded to a domestic disturbance call by a complainant, who wished to remain anonymous, at Martinez-Gonzalez's residence. Once at Martinez-Gonzalez's residence, the police learned and verified that Diaz-Quirazco had been at Martinez-Gonzalez's residence in violation of the Restraining Order's prohibition against Diaz-Quirazco contacting Martinez-Gonzalez. While the police were speaking with Martinez-Gonzalez and her son,

the complainant called dispatch back to provide Diaz-Quirazco's location. The police were dispatched to the specified location; Diaz-Quirazco was arrested.

The Marion County District Attorney filed an information against Diaz-Quirazco, charging him with one count of Contempt of Court under ORS § 33.015 and sought punitive sanctions. On September 22, 2010, Diaz-Quirazco pled guilty to Contempt of Court for violating the Restraining Order, certifying the following factual basis for his guilt: "On or about Sept. 12, 2010 in Marion County, OR, knowing that a restraining order was in place, I did unlawfully and willfully disobey said restraining order by contacting [Martinez-Gonzalez] in person." The Oregon Court entered a judgment against Diaz-Quirazco of Contempt of Court in violation of the Restraining Order for "willfully engaging in . . . [d]isobedience of, resistance to, or obstruction of the Court's authority, process, orders, or judgments." The Oregon Court imposed a sentence of imprisonment with credit for time served, payment of a fine, and supervised probation subject to conditions.

B.

On September 23, 2010, Immigration and Customs Enforcement ("ICE") detained and interviewed Diaz-Quirazco, and the Department of Homeland Security ("DHS") filed a Notice to Appear ("NTA") for removal proceedings against Diaz-Quirazco. On October 6, 2010, Diaz-Quirazco, represented by counsel, appeared before an IJ, admitted the allegations in the NTA, and conceded the charge of removability. The IJ granted Diaz-Quirazco's request for a continuance to file applications for asylum, withholding of removal, Convention Against Torture protection, and cancellation of removal.

After a hearing, the IJ pretermitted and denied Diaz-Quirazco's application for cancellation of removal and granted his request for post-conclusion voluntary departure.[1] The IJ held that Diaz-Quirazco met his burden in persuading the court that his testimony and evidence were credible but that Diaz-Quirazco did not satisfy his burden of establishing eligibility for cancellation of removal because he had been convicted of all the elements of the offense of violating a protection order under § 1227(a)(2)(E)(ii). The IJ reasoned that even though the violation of a FAPA Restraining Order is not a categorical match to the generic federal definition of a crime under the framework set forth in *Taylor/Descamps*,[2] Diaz-Quirazco's offense was a match under the modified categorical approach because Diaz-Quirazco contacted Martinez-Gonzalez in person, which violated the stay-away provision of the Restraining Order that protected Martinez-Gonzalez against credible threats of violence, repeated harassment, or bodily injury.

Furthermore, the IJ found that "although a violation of a FAPA order is not considered a crime under Oregon law, it

---

[1] The IJ also denied Diaz-Quirazco's applications for asylum, withholding of removal, and relief under the Convention Against Torture, which Diaz-Quirazco did not challenge on appeal before the BIA and does not challenge here.

[2] Under the framework prescribed in *Taylor v. United States*, 495 U.S. 575 (1990), and *Descamps v. United States*, 570 U.S. 254 (2013), the court compares the state statute of conviction with the generic federal definition of the crime to determine whether the respondent has been convicted of all the necessary elements. If the state statute is not a "categorical" match to the federal definition, then the court determines whether the state statute is divisible and, if so, looks to "a limited class of documents, such as indictments and jury instructions," to determine whether the conviction qualifies as a removable offense for immigration purposes. *Descamps*, 570 U.S. at 257.

nonetheless constitutes an offense under [the] INA" because the INA "requires a trial or proceeding girded with the constitutional safeguards that traditionally accompany criminal adjudications . . . includ[ing] the right to counsel and the State's burden to prove the elements of the offense . . . to ensure fundamental fairness and to establish a conviction for immigration purposes." Diaz-Quirazco timely appealed the IJ's decision.

## C.

On June 17, 2016, the BIA dismissed Diaz-Quirazco's appeal. The BIA held Diaz-Quirazco was statutorily ineligible for cancellation of removal because he had been convicted of an offense under § 1227(a)(2)(E)(ii). The BIA's decision addressed whether Diaz-Quirazco's offense was a "conviction" under the INA's definition, 8 U.S.C. § 1101(a)(48)(A), and whether a court determined that Diaz-Quirazco's "offense" involved engaging in the conduct described under § 1227(a)(2)(E)(ii).

First, the BIA determined that Diaz-Quirazco's "offense" resulted in a "conviction" under § 1101(a)(48)(A)'s definition. The BIA noted that whether Oregon labels Diaz-Quirazco's offense as a crime is not dispositive. The BIA explained that for a judgment to constitute a "conviction" under the INA's definition, certain factors are considered, including but not limited to: whether each element of every offense was proved beyond a reasonable doubt; whether the sanctions resulting from such conviction are punitive; whether there are constitutional safeguards normally attendant upon a criminal adjudication; and whether a conviction for a municipal violation gives rise to any disability or legal disadvantage. The BIA concluded that these factors favored meeting the definition for "conviction." The Oregon Court had the authority to

adjudicate guilt and to impose penalties under ORS § 33.015–155, and the Oregon Court imposed against Diaz-Quirazco the penalties of imprisonment, probation, and fees. The BIA further explained that Oregon's statute under which Diaz-Quirazco was charged provides that when a punitive sanction is sought, such as here, the following safeguards are required: every element of the offense must be proven beyond a reasonable doubt under ORS § 33.065(9); the charging document is subject to the same requirements and laws as those in criminal proceedings under ORS § 33.065(5); and the defendant has a right to appointed counsel under ORS § 33.065(6). The BIA reasoned that these relevant factors support the conclusion that the proceeding to determine whether Diaz-Quirazco violated the Restraining Order was "criminal in nature" and thus the judgment was a "conviction" within the definition of § 1101(a)(48)(A).

Second, under *Szalai v. Holder*, 572 F.3d 975, 982 (9th Cir. 2009), the BIA affirmed the IJ's determination that Diaz-Quirazco's "offense" disqualified him from eligibility for cancellation of removal because he violated the stay-away portion of the Restraining Order issued under Oregon's FAPA. Diaz-Quirazco timely petitioned to this Court for review of the final order of removal entered by the BIA.[3]

---

[3] On August 15, 2018, the Government submitted a letter pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure and Ninth Circuit Rule 28-6, citing two BIA opinions published after the parties' briefings: *Obshatko*, 27 I. & N. Dec. 173, and *Medina-Jimenez*, 27 I. & N. Dec. 399. A court order directed the parties to be prepared to discuss these cases at oral argument.

II.

This case presents two issues. First, whether we should accord deference to the BIA's interpretation that § 1229b(b)(1)(C) does not require analysis under the categorical approach for determining whether an alien's violation of a protection order renders him convicted of an offense under § 1227(a)(2)(E)(ii), as articulated in the BIA's published opinion of *Medina-Jimenez.* Second, whether to defer to the BIA's interpretation that § 1101(a)(48)(A) does not require that the underlying offense be labeled a crime as long as the proceeding was "criminal in nature."

"The proper standard of review in immigration proceedings depends on the nature of the decision being reviewed." *Aguilar Gonzalez v. Mukasey*, 534 F.3d 1204, 1208 (9th Cir. 2008). Questions of law are reviewed de novo. *Camacho-Cruz v. Holder*, 621 F.3d 941, 942 n.1 (9th Cir. 2010) (reviewing de novo legal determinations regarding alien's eligibility for cancellation of removal, as well as the determination that a conviction is a crime of violence). We review de novo whether a state or federal conviction is an offense with immigration consequences. *Arellano Hernandez v. Lynch*, 831 F.3d 1127, 1130 (9th Cir. 2016) ("We review de novo whether a particular conviction under state law is a removable offense.").

III.

We first address whether we defer to the BIA's interpretation in *Medina-Jimenez* that the categorical approach does not apply in assessing whether an alien is ineligible for cancellation of removal under § 1229b(b)(1)(C) based on an offense of violating a protection order under § 1227(a)(2)(E)(ii). We owe deference to the BIA's interpretation of the INA in certain

instances because of its expertise in making such determinations. *Uppal v. Holder*, 605 F.3d 712, 714 (9th Cir. 2010). We follow the *Chevron* framework, "if the [BIA's] decision is a published decision (or an unpublished decision directly controlled by a published decision interpreting the same statute)." *Id.*; *see also Valenzuela Gallardo v. Lynch*, 818 F.3d 808, 815 (9th Cir. 2016) (finding that *Chevron* deference applies where "there is 'binding agency precedent on-point' in the form of a published BIA opinion" (quoting *Renteria-Morales v. Mukasey*, 551 F.3d 1076, 1081 (9th Cir. 2008))).

Here, *Medina-Jimenez* is a published BIA decision that directly addresses the interpretation of § 1227(a)(2)(E)(ii) in determining whether an alien's violation of a protection order renders him ineligible for cancellation of removal under § 1229b(b)(1)(C). This triggers the application of the two-step *Chevron* framework.

First, "we determine 'whether Congress has directly spoken to the precise question at issue.'" *Perez-Guzman v. Lynch*, 835 F.3d 1066, 1073 (9th Cir. 2016) (quoting *Humane Soc'y of U.S. v. Locke*, 626 F.3d 1040, 1054 (9th Cir. 2010)). "If the intent of Congress is clear, that is the end of the matter" because "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43. If, however, "Congress has not spoken to a particular issue or the statute is ambiguous," we proceed to the second step. *Perez-Guzman*, 835 F.3d at 1073. We must then determine whether the agency's interpretation is "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. If the "agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what

the court believes is the best statutory interpretation." *Perez-Guzman*, 835 F.3d at 1073–74 (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005) ("*Brand X*")).

### A.

The INA identifies several circumstances under which an alien present in the United States is deemed to belong to a "class[] of deportable aliens" and may be removed from the country on those grounds. 8 U.S.C. § 1227(a). An alien, even if legally present in the United States, may be deported if he commits "[c]rimes of domestic violence, stalking, or violation of protection order." *Id.* § 1227(a)(2)(E). A "violator[] of protection orders" is removable under the following provision:

> Any alien who at any time after admission is enjoined under a protection order issued by a court and whom the court *determines has engaged in conduct* that violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued is deportable. For purposes of this clause, the term "protection order" means any injunction issued for the purpose of preventing violent or threatening acts of domestic violence, including temporary or final orders issued by civil or criminal courts (other than support or child custody orders or provisions) whether obtained by filing an independent action or as a pendente lite order in another proceeding.

*Id.* § 1227(a)(2)(E)(ii) (emphasis added).

There is no dispute that Diaz-Quirazco is removable under this statutory section. He pled guilty to engaging in conduct that violated the "no-contact" provision of the Restraining Order. The record supports that Diaz-Quirazco conceded that he violated the portion of the restraining order that issued to prevent him from further committing violence against Martinez-Gonzalez. Because he is removable, Diaz-Quirazco's ability to remain in the United States thus hinges on obtaining cancellation of removal.

Section 1229b(b) prescribes statutory relief from removal:

> The Attorney General may cancel removal of . . . an alien who is . . . deportable from the United States if the alien . . . has not been convicted of an offense under section . . . 1227(a)(2) . . . of this title, subject to paragraph (5)[.]

*Id.* § 1229b(b)(1)(C).

### B.

Under *Chevron*'s step one, we conclude that Congress has not directly spoken to the interplay of §§ 1227(a)(2)(E)(ii) and 1229b(b)(1)(C). In the first instance, § 1229b(b)(1)(C) prescribes: An alien who is deportable from the United States must prove several elements to be eligible for cancellation of removal, including "not [having] been convicted of an offense under section . . . 1227(a)(2)." Generally, the word "conviction" triggers the categorical approach of *Taylor*/*Descamps*. *See Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) ("'[C]onviction' is the

'relevant statutory hook.'" (alteration in original) (quoting *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 580 (2010))); *see also Mellouli v. Lynch*, 135 S. Ct. 1980, 1986 (2015) ("Rooted in Congress' specification of conviction, not conduct, as the trigger for immigration consequences, the categorical approach is suited to the realities of the system.").

In the second instance, one of the listed removable offenses of § 1229b(b) includes a violation of protection orders. Section 1227(a)(2)(E)(ii) proffers removability for an alien who has "*engaged in conduct* that violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued." (emphasis added).

The presence of the word "convicted" in § 1229b(b)(1)(C) and its absence from § 1227(a)(2)(E)(ii), renders the statutory language ambiguous regarding whether the categorical approach applies to determining whether an alien is removable under § 1229b(b)(1)(C) for violating a protection order under § 1227(a)(2)(E)(ii). Congress intentionally used "convicted" in the relief provision. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("In construing a statute we are obliged to give effect, if possible, to every word Congress used."). Congress intentionally excluded it in the removability provision and instead provided a detailed explanation of the type of "conduct" that an alien must engage in, to be removable. Accordingly, we proceed to the second step of *Chevron*.

## C.

Under step two of *Chevron*, we must determine whether the BIA's interpretation of the statute is based on a

permissible construction of the statute. *Chevron*, 467 U.S. at 843. A permissible interpretation is one that is reasonable—or "rational and consistent with the statute." *Sullivan v. Everhart*, 494 U.S. 83, 89 (1990) (quoting *NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 123 (1987)); *see also Chevron*, 467 U.S. at 843.

Here, the BIA interpreted the relevant statutes in *Obshatko*, 27 I. & N. Dec. at 175, and *Medina-Jimenez*, 27 I. & N. Dec. at 401. In *Obshatko*, the BIA determined that "[w]hile we recognize that a conviction may result from an alien's violation of a protection order, . . . the plain language of section [1227](a)(2)(E)(ii) makes clear that a 'conviction' is not required to establish an alien's removability." 27 I. & N. Dec. at 175. The BIA reasoned that "[t]he categorical approach is '[r]ooted in Congress' specification of conviction, not conduct, as the trigger for immigration consequences.'" *Id.* (second alteration in original) (quoting *Mellouli*, 135 S. Ct. at 1986). "Because Congress did not require a 'conviction' under section [1227](a)(2)(E)(ii)" of the INA, the BIA "conclude[d] that it did not intend an alien's removability under that section to be analyzed under either the categorical or modified categorical approach." *Id*. The BIA explained:

> [W]hether a violation of a protection order renders an alien removable under section [1227](a)(2)(E)(ii) of the [INA] is not governed by the categorical approach, even if a conviction underlies the charge. Instead, an Immigration Judge should consider the probative and reliable evidence regarding what a State court has determined about the alien's violation. In so doing, an Immigration

Judge should decide (1) whether a State court "determine[d]" that the alien "has engaged in conduct that violates the portion of a protection order that involve[d] protection against credible threats of violence, repeated harassment, or bodily injury" and (2) whether the order was "issued for the purpose of preventing violent or threatening acts of domestic violence." Section [1227](a)(2)(E)(ii) of the [INA].

*Id.* at 176–77.

In *Medina-Jimenez*, the BIA built on this reasoning to conclude "that the categorical approach does not apply when deciding whether an alien's violation of a protection order renders him 'convicted of an offense' for purposes of section [1229b](b)(1)(C)." 27 I. & N. Dec. at 401 (quoting *Obshatko*, 27 I. & N. Dec. at 176–77). The BIA reasoned:

The use of the term "convicted" in section [1229b](b)(1)(C) of the [INA] does not mean that the categorical approach must be applied. That section refers to offenses in various provisions of the [INA] that require a conviction, but here we are concerned with an offense that is alleged to be "under" section [1227](a)(2)(E)(ii) of the [INA], for which a conviction is not essential. Although a conviction is necessary in the context of cancellation of removal, it would be incongruous to apply the elements-based categorical approach to section [1227](a)(2)(E)(ii), which focuses on a

court's determination regarding an alien's conduct.

*Id.* at 403 (citation omitted).

The BIA articulated a two-step approach for analyzing whether an alien is ineligible for cancellation of removal under § 1229b(b) for an offense of violating a protection order under § 1227(a)(2)(E)(ii): (1) "whether the offense at issue resulted in a 'conviction' within the statutory definition set forth at section [1101](a)(48)(A) of the [INA]"; and (2) "whether the State court has found that the alien 'engaged in conduct that violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection ordered was issued,' as directed by section [1227](a)(2)(E)(ii)." *Id.* at 401–02 (footnote omitted). In analyzing the second step, IJs must "follow the analysis provided in *Matter of Obshatko*—that is, they should review the probative and reliable evidence regarding whether the State court's findings that a protection order has been violated meet the requirements of section [1227](a)(2)(E)(ii)." *Id.* at 402.

The BIA's interpretation in *Obshatko* and *Medina-Jimenez* is reasonable and consistent with the statute. The BIA reasonably read § 1227(a)(2)(E)(ii) as focusing on the alien's "conduct" and the "portion" of the protection order that was violated. While a conviction may underlie the charge, whether the alien has been "convicted" is not the critical question of § 1227(a)(2)(E)(ii). Instead, the statutory provision focuses on what the state court found about the alien's conduct. The BIA's two-step inquiry for determining whether an alien is ineligible for cancellation of removal based on a violation of a protection order is consistent with the statutory language and is a reasonable interpretation:

whether the alien has been "convicted" as defined by § 1101(a)(48)(A); and whether a state court found that the alien's "offense" involves conduct described under § 1227(a)(2)(E)(ii). Accordingly, the BIA's interpretation is a rational, permissible construction of the statute.

Although the reasonableness of the BIA's interpretation does not depend upon consistency with our prior decisions, it is consistent with our reading in *Gonzalez-Gonzalez v. Ashcroft*:

> The plain language of § 1229b indicates that it should be read to cross-reference [the] list of offenses . . . , rather than the statutes as a whole. The most logical reading of "convicted of an offense under" is that reached by the BIA: "convicted of an offense *described* under" each of the three [listed] sections. The alternative reading . . .— "convicted under" the statute—is not logical.

390 F.3d 649, 652 (9th Cir. 2004); *see id.* at 652–53 (explaining that the legislative history further supports our construction, as the final version included the language of the "offense under" the enumerated sections). This is in line with the BIA's conduct-based interpretation in *Medina-Jimenez*.

However, our holding in *Szalai v. Holder*, 572 F.3d 975 (9th Cir. 2009) (per curiam), reached a similar result using the categorical/modified approach. We held that a violation of the "stay-away" provision of an Oregon FAPA restraining order qualified as a removable offense. *Id.* at 982. In effect, we undertook the same analysis as the BIA in *Medina-Jimenez*: whether the alien has been "convicted of an offense" for purposes of cancellation of removal and

whether the state court found that the defendant's "offense" involved conduct that violated the portion of the restraining order concerning the protection against violence. We extensively analyzed these questions. *Id.* at 980–82 (discussing and applying the precedential holding in *Alanis-Alvarado v. Holder*, 558 F.3d 833, 839–40 (9th Cir. 2009), that "[a] conviction for violating a protection order issued" under § 1227(a)(2)(E)(ii) requires the determination of "what portion of the protection order was violated"). We reasoned that the inherent nature of an Oregon FAPA restraining order and, even more specifically, the "stay-away" provision is to prevent abuse and physical harm to the person for whom the restraining order was issued. *Id.* at 981–82. Our finding and reasoning is consistent with the BIA's construction in *Medina-Jimenez*.

Despite our use of the categorical/modified approach in *Szalai*, the result is the same as in *Medina-Jimenez* and consistent with the statutory text: (1) whether, for ineligibility of cancellation of removal under § 1229b(b)(1)(C), the alien has been "convicted," as defined by § 1101(a)(48)(A); and (2) whether, for the removable "offense" under § 1227(a)(2)(E)(ii) for violating a protection order, (a) the state court determined that the defendant's conduct violated the portion of the restraining order "involv[ing] protection against credible threats of violence, repeated harassment, or bodily injury" and (b) the restraining order was issued for the purpose of protecting a person against such violence. Moreover, we did not explicitly reject a conduct-based approach in *Szalai*. *See id.* at 982 n.11 ("We note that, in *Alanis-Alvarado*, we followed the modified categorical approach, albeit without obviously rejecting an argument that we should not do so."). Nevertheless, to the extent the BIA's approach differs from *Szalai*'s use of the categorical/modified approach, it is entitled to deference.

An agency's reasonable statutory interpretation is entitled to deference, "even if the agency's reading differs from what the court believes is the best statutory interpretation." *Brand X*, 545 U.S. at 980. Because we find that the BIA reasonably interpreted §§ 1227(a)(2)(E)(ii) and 1229b(b)(1)(C), we defer to the BIA's prescribed framework in *Medina-Jimenez* for assessing whether an alien is ineligible for cancellation of removal for being "convicted of an offense" under § 1227(a)(2)(E)(ii).

## IV.

We next address whether we accord deference to the BIA's interpretation that § 1101(a)(48)(A) does not require the underlying offense to be labeled as a crime as long as the proceeding was "criminal in nature."

## A.

Under *Medina-Jimenez*, the first step in deciding whether an alien is ineligible for cancellation of removal is to determine whether the alien was "convicted" as defined by § 1101(a)(48)(A). Diaz-Quirazco argues that because his contempt of court judgment is not a crime under Oregon law, the BIA erred in concluding that he was convicted as that term is used in § 1229b(b)(1)(C). *See Bachman v. Bachman*, 16 P.3d 1185, 1188 (Or. 2000) ("[A] contempt proceeding is neither civil nor criminal . . . [but] a unique and inherent power of a court to ensure compliance with its orders."). We reject this argument. While the state's moniker of an offense is relevant to whether the defendant's offense qualifies as a "conviction" under the INA for the purpose of cancellation of removal, the state's labeling of the offense is not dispositive in our review of whether the BIA reasonably interpreted § 1101(a)(48)(A). Before we can determine whether Diaz-Quirazco's contempt of court judgment

satisfies the first step of *Medina-Jimenez*, we must first assess whether the BIA's interpretation of § 1101(a)(48)(A) is entitled to *Chevron* deference.

The INA defines "conviction" as:

> a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where–
>
>> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>>
>> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A).

In a series of published opinions, the BIA has set forth its interpretation of what type of proceedings amount to a "conviction" under the INA. In *Eslamizar*, 23 I. & N. Dec. 684, an alien who was adjudicated guilty of a Class A theft violation—which is also not a crime under Oregon law— argued that the judgment did not qualify as a conviction. *See id.* at 685; ORS §§ 161.505, 161.515. The BIA found the INA's definition of conviction unclear but held that "by 'judgment of guilt' Congress most likely intended to refer to a judgment in a criminal proceeding, that is, a trial or other proceeding whose purpose is to determine whether the accused committed a crime and which provides the constitutional safeguards normally attendant upon a criminal adjudication." *Eslamizar*, 23 I. & N. Dec. at 687 (emphasis

omitted). The BIA has subsequently clarified *Eslamizar* and reaffirmed that an alien is "convicted" only when the underlying proceeding was "criminal in nature under the governing laws of the prosecuting jurisdiction." *Matter of Cuellar-Gomez*, 25 I. & N. Dec. 850, 851–53 (BIA 2012) (holding that a municipal court's proceedings in which a judgment of guilt was entered against an alien for a misdemeanor offense was "criminal in nature" despite the fact that the alien was not afforded an absolute right to be represented by counsel or the right to a jury trial); *Matter of Rivera-Valencia*, 24 I. & N. Dec. 484, 486–87 (BIA 2008) (holding an alien's judgment of guilt entered by a general court-martial constituted a "conviction" under the INA because the judgment was entered in a proceeding that was "criminal in nature" despite the absence of a right to a jury trial).

As discussed above, *supra* Part III, the BIA has authority to interpret the INA's codified definition of conviction. *See Murillo-Espinoza v. INS*, 261 F.3d 771, 774 (9th Cir. 2001). Because the BIA has set forth an interpretation of that definition in published decisions, its permissible construction of the statute is entitled to deference under *Chevron*, unless we determine that the expressed intent of Congress was unambiguous. *See id.* at 773 (citing *Chevron*, 467 U.S. at 842–43).

The parties dispute whether Diaz-Quirazco's judgment for contempt of court satisfies "a formal judgment of guilt" under § 1101(a)(48)(A).[4] We must decide whether

---

[4] Neither party contends that Diaz-Quirazco's contempt of court judgment qualifies as an "adjudication of guilt that has been withheld." 8 U.S.C. § 1101(a)(48)(A). To the extent that the judgment could be so construed, there is no dispute that Diaz-Quirazco "entered a plea of

Congress has unambiguously foreclosed the BIA's interpretation of "formal judgment of guilt." We begin by noting the word "criminal" is conspicuously absent from the text of § 1101(a)(48)(A). Rather, "formal" is the word Congress employed to describe the proceedings that may result in a conviction. Black's Law Dictionary defines "formal" as "pertaining to or following established procedural rules, customs, and practices." Formal, Black's Law Dictionary (9th ed. 2009). It thus appears that Congress intended for only those adjudications carried out according to certain rules and procedures to carry immigration consequences. "Formal" suggests that the proceeding should at the very least comply with basic notions of procedural due process—*e.g.*, notice and opportunity to be heard in front of an impartial tribunal.[5] Therefore, we conclude that the text of § 1101(a)(48)(A) is unspecific and

---

guilty . . . and . . . the judge entered some form of punishment, penalty, or restrain on [Diaz-Quirazco]'s liberty." *Id.* § 1101(a)(48)(A)(i)–(ii). In addition to being fined $532, Diaz-Quirazco was confined in jail for nine days with credit for time served and placed under the Marion County Correction's supervision for 24 months.

[5] The legislative history likewise does not suggest that Congress had a specific idea of what procedures a "formal judgment" would entail. If anything, it suggests Congress intended to expand the meaning of conviction. When Congress amended 8 U.S.C. § 1101(a)(48)(A), it noted in the House Report that its intent was to statutorily overrule the BIA's former interpretation of "conviction" in *Matter of Ozkok*, 19 I. & N. Dec. 546 (BIA 1988). The basic concern, it seems, was that there was "a myriad of [state] provisions for ameliorating the effects of a conviction" and consequently, "aliens who have clearly been guilty of criminal behavior and whom Congress intended to be considered 'convicted' have escaped the immigration consequences normally attendant upon a conviction." H.R. REP. NO. 104-828, at 224 (1996). Accordingly, the House Report notes that the amended definition "deliberately broaden[ed] the scope of the definition of 'conviction.'" *Id.*

ambiguous as to what formalities a judgment of guilt must contain.

### B.

We next consider whether the BIA's construction of § 1101(a)(48)(A) is permissible, even if that construction is not necessarily the best interpretation or the interpretation we would adopt in the absence of an agency interpretation. *See Chevron*, 467 U.S. at 843 & n.11.

The BIA's conclusion that the INA definition of conviction does not depend on the moniker the state affixed to the offense is reasonable. *See Matter of Mohamed*, 27 I. & N. Dec. 92, 96 (BIA 2017) ("[T]he question is not whether the State . . . regards [the offense] as a conviction, but rather whether the [offense] meets the Federal definition of a 'conviction' in section [1101](a)(48)(A)." (quoting *Matter of Roldan*, 22 I. & N. Dec. 512, 516 (BIA 1999)). "Because the term 'conviction' is defined by the [INA], the statutory definition alone" governs the BIA's determination. *Mohamed*, 27 I. & N. Dec. at 98 (finding that "[a]lthough the successful completion of a pretrial intervention agreement in Texas may not result in a conviction for purposes of State law," it does meet the definition of the INA); *see also In Re Punu*, 22 I. & N. Dec. 224, 229 (BIA 1998) ("[I]n the absence of a plain indication to the contrary, . . . it is to be assumed when Congress enacts a statute that it does not intend to make its application dependent on state law." (quoting *NLRB v. Nat. Gas Util. Dist.*, 402 U.S. 600, 603 (1971))). "When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning." *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000).

Although "conviction" generally connotes a judgment in a criminal proceeding, Congress specifically chose not to use that word in defining conviction, despite using it to define other terms in that section. *See, e.g.*, 8 U.S.C. § 1101(a)(15)(U)(i)(II) ("The term 'immigrant' means every alien except . . . an alien who files a petition for status . . . if the Secretary of Homeland Security determines that . . . the alien . . . possesses information concerning *criminal* activity . . . ." (emphasis added)); *id.* § 1101(a)(43)(F) ("The term 'aggravated felony' means . . . a *crime* of violence . . . ." (emphasis added)). The BIA's conclusion that "formal judgment" requires the proceeding to be "criminal in nature" is a permissible construction. Looking to whether the adjudication was "criminal in nature" and proceeded with certain constitutional safeguards is reasonable in light of varying state classifications and procedures. *See Lopez v. Gonzales*, 549 U.S. 47, 58 (2006); *Kahn v. INS*, 36 F.3d 1412, 1414 (9th Cir. 1994) ("The INA 'was designed to implement a uniform federal policy,' and the meaning of concepts important to its application are 'not to be determined according to the law of the forum, but rather require[ ] a uniform federal definition.'" (alteration in original) (quoting *Rosario v. INS*, 962 F.2d 220, 223 (2d Cir. 1992))).

Because the BIA's interpretation that "conviction" requires that the proceeding contain "constitutional safeguards normally attendant upon a criminal adjudication" is a reasonable interpretation, we defer to it under *Chevron*.

## V.

## A.

In light of our conclusion that we defer to the BIA's *Medina-Jimenez* framework for determining ineligibility for

cancellation of removal based on a violation of a protection order and to the BIA's interpretation that a "conviction" under the INA must be "criminal in nature," we next turn to whether the BIA erred in finding Diaz-Quirazco ineligible for cancellation of removal. Under *Medina-Jimenez*, Diaz-Quirazco is ineligible for cancellation of removal only if the judgment against him qualifies as a conviction under § 1101(a)(48)(A) and was for a removable offense under § 1227(a)(2)(E)(ii).

We agree with the BIA that Diaz-Quirazco's judgment qualifies as a "conviction" under the INA, in light of the deference owed to the BIA's interpretation of this definition. Diaz-Quirazco was subject to Oregon's contempt of court proceedings, which fall within this definition. The penalty for contempt of court was punitive in nature, as the court was statutorily authorized to impose sentences of confinement up to six months. ORS § 33.105(2). Apart from the right to a jury trial, Diaz-Quirazco, subject to punitive sanctions for contempt in Oregon, was "entitled to the constitutional and statutory protections, including the right to appointed counsel, that a defendant would be entitled to in a criminal proceeding in which the fine or term of imprisonment that could be imposed is equivalent to the punitive sanctions sought in the contempt proceeding." ORS § 33.065(6); *see also State v. Hauskins*, 281 P.3d 669, 673 (Or. Ct. App. 2012) ("[A]though punitive contempt is not a 'crime' . . . all the procedures applicable to a criminal proceeding (except the right to a jury trial) apply, ORS [§] 33.065(5), (6), including the standard of proof beyond a reasonable doubt, ORS [§] 33.065(9)."). We therefore conclude Diaz-Quirazco was "convicted" as that term has been defined by the BIA pursuant to its interpretive authority over § 1229b(b)(1)(C).

We also agree with the BIA that Diaz-Quirazco's offense qualifies as removable conduct as described under § 1227(a)(2)(E)(ii).  The Restraining Order prohibited Diaz-Quirazco from having any contact with Martinez-Gonzalez and was issued for the purpose of protecting her against physical, verbal, and sexual abuse of Diaz-Quirazco.  He violated the Restraining Order by contacting Martinez-Gonzalez and appearing at her residence.  Diaz-Quirazco does not challenge that he pled guilty to violating the provision of the Restraining Order that prohibited his contact with Martinez-Gonzalez.  Diaz-Quirazco's offense was a direct violation of the "stay-away" portion of the Restraining Order that aimed to protect Martinez-Gonzalez "against credible threats of violence, repeated harassment, or bodily injury" to her and her child.  We therefore agree with the BIA that Diaz-Quirazco's conduct qualifies as a removable "offense" under § 1227(a)(2)(E)(ii) for violating a protection order.

## B.

We disagree with Diaz-Quirazco's argument that this case should be remanded to the BIA.  Generally, when "reviewing the decision of the BIA, we consider only the grounds relied upon by that agency" and "[i]f we conclude that the BIA's decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case."  *Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) (per curiam).  We do not remand a case to the BIA "where only legal questions remain and these questions do not invoke the Board's expertise" and where "all relevant evidence regarding the conviction [have] been presented to the BIA in earlier proceedings."  *Flores-Lopez v. Holder*, 685 F.3d 857, 865 (9th Cir. 2012) (quoting *Fregozo v. Holder*, 576 F.3d 1030,

1039 (9th Cir. 2009)). Although the BIA had not yet decided *Obshatko* and *Medina-Jimenez* when it issued its decision in Diaz-Quirazco's appeal, it functionally undertook the same analysis. This is the rare case where remand is not appropriate.

The BIA first determined that Diaz-Quirazco's judgment for contempt of court in Oregon was a "conviction" within the statutory definition set forth at § 1101(a)(48)(A). The BIA reviewed the charging documents and relevant record to assess whether the Oregon proceeding was "criminal in nature," including the type of sanctions imposed and whether the proceeding consisted of the "constitutional safeguards normally attendant to a criminal adjudication." *Eslamizar*, 23 I. & N. Dec. at 687; *see also Rivera-Valencia*, 24 I. & N. Dec. at 487. The BIA found that the Oregon Court had the authority to adjudge guilt and to impose penalties, and the contempt judgment included a sentence of imprisonment, probation, and fees. Citing ORS § 33.065(5), (6), (9), the BIA reasoned that the charging documents sought "a punitive sanction," that the proceeding statutorily required every element of the offense be proven by the criminal standard of proof beyond a reasonable doubt, and that Diaz-Quirazco had the right to appointed counsel. The BIA further explained that "since there is no other criminal provision to address this offense, the defendant [wa]s not at risk of double jeopardy as a result of violating a restraining order." The BIA, thus, concluded that Diaz-Quirazco was "convicted" under the INA.

Next, the BIA proceeded to review the record to determine whether probative and reliable evidence demonstrated that Diaz-Quirazco engaged in the removable conduct described under § 1227(a)(2)(E)(ii). The BIA concluded that Diaz-Quirazco "violated the stay-away

portion of the restraining order."  In doing so, the BIA
affirmed the IJ's determination, and cited to *Szalai*, 572 F.3d
at 982, for its holding that "the Board's determination that
petitioner was ineligible for cancellation of removal because
his contempt charge for disobeying the 'stay away' portion
of a restraining order issued pursuant to Oregon's FAPA
constitutes an offense under section [1227](a)(2)(E)(ii) of
the [INA]."  The IJ's decision, affirmed by the BIA, found
that Diaz-Quirazco

> violated the stay away provision of the
> restraining order protecting Georgina
> Martinez-Gonzalez when he contacted Ms.
> Martinez-Gonzalez in person.  A violation of
> the stay away provision of a restraining order
> involves "protection against credible threats
> of violence, repeated harassment, or bodily
> injury," and is subsequently an offense under
> [the] INA § [1227](a)(2)(E)(ii).  *Szalai*,
> 572 F.3d at 982; *see also Matter of Strydom*,
> 25 [I. & N.] Dec. 507, 510 (BIA 2011)
> (holding that the violation of a no contact
> provision in a Kansas protective order
> involves "protection against credible threats
> of violence, repeated harassment, or bodily
> injury").

Admittedly, this was under the IJ's modified categorical
approach analysis.  But, this does not matter because the IJ
and BIA functionally undertook the same analysis as was
later prescribed by *Medina-Jimenez*.  The BIA sufficiently
reviewed the evidence in the record, which reliably evinced
that Diaz-Quirazco's offense was a direct violation of the
"no contact" portion of the Restraining Order, which had
been issued for the purpose of protecting Martinez-Gonzalez

"against credible threats of violence, repeated harassment, or bodily injury" to her and her child.

Because the BIA fully considered the necessary steps for determining whether Diaz-Quirazco was ineligible for cancellation of removal based on a violation of the Restraining Order, we conclude that remand is not appropriate in this case. *Cf. INS v. Ventura*, 537 U.S. 12, 14–18 (2002) (per curiam) (remanding where asylum issue was not fully considered by the BIA). Unlike in *Flores-Lopez*, 685 F.3d at 866, where we remanded to the BIA because "it [wa]s unclear whether DHS had the opportunity to introduce all of the relevant evidence regarding petitioner's conviction in the proceedings below," here all evidence relevant to the analysis subsequently required under *Medina-Jimenez* was before the IJ and BIA. *See Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1135 (9th Cir. 2006) (en banc) ("Beyond the bare-bones documents needed to show [the alien] had a prior conviction—the complaint and the judgment—the government presented the agency with [the alien's] plea agreement. On these facts, new developments in the law do not warrant a remand."). Therefore, the BIA's decision can be sustained upon its reasoning.

**PETITION DENIED**.

---

FISHER, Circuit Judge, dissenting:

I agree with much of the majority opinion but disagree with the majority that the BIA adequately reconciled its decision in this case with its precedential decisions interpreting the term "formal judgment of guilt" in the

Immigration and Nationality Act's definition of "conviction." 8 U.S.C. § 1101(a)(48)(A).

These decisions require that a conviction arise from a proceeding that is "criminal in nature *under the governing laws of the prosecuting jurisdiction.*" *Matter of Eslamizar*, 23 I. & N. Dec. 684, 688 (BIA 2004) (emphasis added). Under this standard, a proceeding such as Diaz-Quirazco's punitive contempt proceeding – which is not criminal under Oregon law and does not conform to state requirements for criminal proceedings – seemingly should not result in a "conviction" for immigration purposes. The decision under review here, however, does not address whether Diaz-Quirazco's proceeding was criminal in nature under the governing laws of Oregon and instead looks to a more uniform federal understanding of what is "criminal in nature"; it considers primarily whether the proceeding provided Diaz-Quirazco with procedural safeguards that the U.S. Constitution requires. Because the BIA decision does not reconcile this approach with published precedent, I would grant the petition for review and remand to the BIA for, at minimum, a better explanation of its reasoning. *See Alphonsus v. Holder*, 705 F.3d 1031, 1049 (9th Cir. 2013) ("[A]bsent an adequate explanation as to how the Board's . . . rationale can be reconciled with the Board's precedents and with the statutory language, we cannot say that the Board's decision was the result of legally adequate decisionmaking."), *abrogation on other grounds recognized by Guerrero v. Whitaker*, 908 F.3d 541, 544 (9th Cir. 2018). I therefore respectfully dissent.

I

Under § 1101(a)(48)(A), "[t]he term 'conviction' means, with respect to an alien, a formal judgment of guilt of the alien entered by a court." In *Matter of Eslamizar*, the

Board's major decision interpreting "formal judgment of guilt," the Board considered whether a third-degree theft judgment in Oregon – classified as a "violation" by the state – was a "formal judgment of guilt," and hence a "conviction." *See* 23 I. & N. Dec. at 685–86. The Board reasoned that "by 'judgment of guilt' Congress most likely intended to refer to a judgment *in a criminal proceeding*, that is, a trial or other proceeding whose purpose is to determine whether the accused committed a crime and which provides the constitutional safeguards normally attendant upon a criminal adjudication." *Id.* at 687. In discussing prosecutions brought by foreign jurisdictions, the Board further determined "that Congress intended that the proceeding must, at a minimum, be criminal in nature under the governing laws of the prosecuting jurisdiction, whether that may be in this country or in a foreign one." *Id.* at 688.

In the three cases applying this standard, *Eslamizar*, *Matter of Rivera-Valencia*, 24 I. & N. Dec. 484 (BIA 2008), and *Matter of Cuellar-Gomez*, 25 I. & N. Dec. 850 (BIA 2012), the Board has strongly suggested that, where the prosecuting jurisdiction is a state, a conviction can arise only from a proceeding that is "criminal in nature" under state law. This appears to mean that a proceeding that would give rise to a conviction in one state may not give rise to a conviction in another, depending on what makes a proceeding "criminal in nature" under the laws of the respective states. The Board has suggested this in three ways.

First, the Board has said so explicitly. It has repeatedly said that a "proceeding must, *at a minimum*, be criminal in nature *under the governing laws of the prosecuting jurisdiction*" if it is to give rise to a conviction. *Eslamizar*, 23 I. & N. Dec. at 688 (emphasis added); *accord Cuellar-*

*Gomez*, 25 I. & N. Dec. at 852; *Rivera-Valencia*, 24 I. & N. Dec. at 486–87. It has clarified that, in the context of a state proceeding, this means the proceeding must be criminal in nature under state law. *See Cuellar-Gomez*, 25 I. & N. Dec. at 853 ("[I]t is evident that the respondent's Wichita judgment was entered in a 'genuine criminal proceeding' under the laws of the State of Kansas."); *cf. Rivera-Valencia*, 24 I. & N. Dec. at 487 ("Because the respondent's crime was adjudicated in a proceeding that was 'criminal in nature' under the laws of the prosecuting jurisdiction – i.e., the United States Armed Forces – we are satisfied that his 'guilt' was determined in a 'genuine criminal proceeding.'").

Second, consistent with this clear language, the Board has looked to the prosecuting state's characterization of an offense to determine whether a proceeding was "criminal in nature." In *Eslamizar*, for instance, the BIA (1) emphasized that Oregon's statutory structure did not define the offense as a "crime"; (2) emphasized that Oregon law did not consider the offense in calculating criminal history; (3) considered whether the proceeding was "subject to the criminal procedure laws of Oregon"; and (4) viewed as "[s]ignificant[]" that Oregon courts did not consider the offense a crime or the proceeding a criminal prosecution. 23 I. & N. Dec. at 687. Similarly, in *Cuellar-Gomez*, the Board considered both (1) whether state criminal procedures applied and (2) whether the state would use the judgment at issue in calculating criminal history. 25 I. & N. Dec. at 853–54.

Third, both *Eslamizar* and *Rivera-Valencia* said that the procedural safeguards required for a judgment to constitute a "formal judgment of guilt" may vary by jurisdiction. In some jurisdictions, the constitutional safeguards afforded criminal defendants in U.S. civilian courts may not be

required. *See Rivera-Valencia*, 24 I. & N. Dec. at 487 (discussing U.S. military jurisdiction); *Eslamizar*, 23 I. & N. Dec. at 688 (discussing foreign jurisdictions). These statements suggest that whether a "formal judgment of guilt" has been entered depends on the prosecuting jurisdiction's understanding of "criminal in nature." They also suggest that, where a prosecuting jurisdiction requires *additional* safeguards above those required by the U.S. Constitution, these safeguards may be required for a proceeding to give rise to a "formal judgment of guilt."

On balance, the BIA's treatment of this issue in *Eslamizar*, *Rivera-Valencia* and *Cuellar-Gomez* suggests that a state proceeding may give rise to a conviction only if it is "criminal in nature" under state law.

## II

It is difficult to argue that Diaz-Quirazco's proceeding was "criminal in nature" under Oregon law. To be sure, in Oregon punitive contempt proceedings are similar to Oregon criminal proceedings in significant respects. *See, e.g.*, Or. Rev. Stat. § 33.065(5)–(6). On balance, however, it seems highly doubtful that punitive contempt proceedings could be characterized as "criminal in nature" under the governing laws of Oregon.

First, Oregon does not classify punitive contempt proceedings as criminal. *See Bachman v. Bachman*, 16 P.3d 1185, 1189 (Or. Ct. App. 2000) (holding that state constitutional rights afforded "[i]n all criminal prosecutions," Or. Const. art. I, § 11, do not apply to a punitive contempt proceeding in Oregon "because contempt is not a criminal prosecution"). Second, because Oregon does not classify punitive contempt as a crime, the "purpose [of punitive contempt proceedings in Oregon] is [not] to

determine whether the accused committed a crime." *Eslamizar*, 23 I. & N. Dec. at 687; *see State v. Campbell*, 267 P.3d 205, 205 (Or. Ct. App. 2011) (explaining that, under Oregon law, "contempt is not a crime" and a judgment should not "characterize contempt of court as a criminal conviction"). Third, although the Oregon Supreme Court has said that the state constitutional right to trial by jury extends to all offenses having "the *character of* criminal prosecutions," *Brown v. Multnomah Cty. Dist. Court*, 570 P.2d 52, 55, 57 (Or. 1977) (emphasis added), this right does not extend to punitive contempt proceedings, *see* Or. Rev. Stat. § 33-065(6); *State ex rel. Dwyer v. Dwyer*, 698 P.2d 957, 958–61, 962 (Or. 1985); *see also State ex rel. Hathaway v. Hart*, 708 P.2d 1137, 1142 (Or. 1985). Indeed, the Oregon courts have held on several occasions that punitive contempt is not a "criminal prosecution" for purposes of Article I, section 11 of the Oregon Constitution generally. *See, e.g.*, *Dwyer*, 698 P.2d at 962 (holding that "a criminal contempt proceeding . . . is not a 'criminal prosecution' within the meaning of Article I, section 11"); *State ex rel. Or. State Bar v. Lenske*, 407 P.2d 250, 253 (Or. 1965) ("Though this is a criminal contempt, it is not a criminal prosecution within the meaning of the constitution." (citation omitted)), *disapproved of on other grounds by Or. State Bar v. Wright*, 785 P.2d 340 (Or. 1990); *Bachman*, 16 P.3d at 1189.[1]

Thus, under Oregon law, Diaz-Quirazco's offense was not a crime, his proceeding was not a criminal proceeding and he was not afforded the state constitutional safeguards

---

[1] Oregon referred to punitive contempt as "criminal contempt" until a statutory revision in 1991. *See Matter of Marriage of Dahlem*, 844 P.2d 208, 208 (Or. Ct. App. 1992) (citing 1991 Or. Laws 1404-18).

that he would have been afforded had he been accused of committing a crime.

### III

Under these circumstances, it would be a challenge to reach the conclusion that a punitive contempt judgment in Oregon is a "judgment of guilt" under *Eslamizar* without ignoring – or at least marginalizing – *Eslamizar*'s holding that the proceeding must be criminal in nature "under the governing laws of the prosecuting jurisdiction." That appears to be what the BIA did here. Even though every relevant published BIA decision has asked whether the proceeding at issue was "criminal in nature *under the governing laws of the prosecuting jurisdiction*," the BIA decision under review did not include the italicized portion of that phrase or explain how it can be applied to the circumstances of this case. Although it is within the BIA's power to reframe its test in this way, it may not do so without explanation. *See Israel v. INS*, 785 F.2d 738, 740 (9th Cir. 1986) ("The BIA acts arbitrarily when it disregards its own precedents and policies without giving a reasonable explanation for doing so.").[2]

---

[2] The majority opinion relies on *Matter of Mohamed*, 27 I. & N. Dec. 92 (BIA 2017), but that decision does not alter *Eslamizar*'s holding that, to give rise to a "formal judgment of guilt," a proceeding must be criminal in nature under the governing laws of the prosecuting jurisdiction. To be sure, *Mohamed* held that "whether or not a conviction exists for immigration purposes is a question of federal law and is not dependent on the vagaries of state law," *Mohamed*, 27 I. & N. Dec. at 96 (quoting *Matter of Roldan*, 22 I. & N. Dec. 512, 516 (BIA 1999)), and that a conviction does not "depend upon the operation of State law," *id.* As the majority opinion recognizes, however, the issue in *Mohamed* was whether the federal or state definition of "conviction" applied. *See id. Mohamed* did not consider how to interpret "formal judgment of guilt"

The BIA's failure to apply *Eslamizar* in a comprehensible fashion is nothing new. In *Castillo v. Attorney General*, 729 F.3d 296, 298 (3d Cir. 2013), the Third Circuit considered whether a New Jersey "disorderly persons" shoplifting offense was a conviction for immigration purposes. In the unpublished decision under review, the Board had concluded that disorderly persons offenses were distinguished from crimes under New Jersey law. *See id.* at 299. The Board nevertheless determined that the offense gave rise to a conviction, focusing almost exclusively on whether each element of the offense needed to be proven beyond a reasonable doubt. *See id.* at 301.

The Third Circuit remanded to the Board for clarification. In surveying the three published decisions discussed above and their application in unpublished BIA opinions, the court could not determine whether the requirement that each element be proved beyond a reasonable doubt, when paired with some criminal penalty, was a sufficient condition for a "conviction." *See id.* at 305–10. It urged the BIA to "attempt to clarify *Eslamizar*," which it characterized as a "problematic opinion." *Id.* at 311.

The problems presented here and in *Castillo* are evident in other unpublished BIA decisions as well. Without any persuasive attempt to reconcile its position with *Eslamizar*, the BIA has repeatedly said that state classifications are

---

under the federal definition. *Mohamed*, therefore, did not overrule *Eslamizar*, *Rivera-Valencia* and *Cuellar-Gomez*. Regardless, to the extent *Mohamed* may have affected a change in the law, it is for the BIA, not this court, to consider the nature of that change and explain its basis in the first instance. *See Pannu v. Holder*, 639 F.3d 1225, 1226 (9th Cir. 2011) (remanding to the BIA where the law impacting a case had changed since the BIA's decision); *Israel*, 785 F.2d at 740; *see also INS v. Ventura*, 537 U.S. 12, 16 (2002).

irrelevant to the "formal judgment of guilt" inquiry. *See, e.g.*, *Matter of Delgado*, 2008 WL 762624, at *1 (BIA Mar. 11, 2008), *pet. for review denied sub nom. Delgado v. Attorney General*, 349 F. App'x 809 (3d Cir. 2009); *Matter of Dilone*, 2007 WL 2463936, at *1 (BIA Aug. 6, 2007); *cf. Matter of Rubio*, 2017 WL 1951523, at *4 (BIA Apr. 11, 2017) ("The decisive issue is not how the prosecuting jurisdiction labels the judgment (or the proceedings in which it was entered) . . . ."), *pet. for review denied sub nom. Rubio v. Sessions*, 891 F.3d 344 (8th Cir. 2018). It has also reached inconsistent conclusions regarding the importance of procedural safeguards other than proof beyond a reasonable doubt. *See Castillo*, 729 F.3d at 309–10 (discussing various BIA decisions).

I would grant the petition for review and remand this case to the BIA with instructions to explain why Diaz-Quirazco's contempt proceeding was "criminal in nature under the governing laws of the prosecuting jurisdiction," or to reconsider its precedent setting forth that rule. Accordingly, I respectfully dissent.